[Civ. No. 3887. Third Appellate District.—September 11, 1930.]

RHODA LOUISA McALISTER, Respondent, v. G. A. DUNGAN et al., Appellants.

Puter & Quinn and W. F. Clybourne for Appellants.

Metzler & Mitchell for Respondent.

MR. PRESIDING JUSTICE FINCH Delivered the Opinion of the Court.—On lands owned by the plaintiff there is a short gulch, at the upper and southerly end of which is a bluff. Immediately below the bluff the gulch is about forty feet in width and it gradually widens and has a steep slope to the north. Water percolates through the gravel and soil in the upper end of the gulch, which is "wet and swampy", and comes to the surface in various places. The defendants G. A. Dungan and Eleanor Dungan are the owners and the defendant Biasca is the lessee of lands lying below the McAlister lands.

In an action in which the defendants' predecessor in interest was the plaintiff and the plaintiff's predecessors in interest were the defendants on December 17, 1902, it was adjudged that the plaintiff therein was "the owner of and vested with the legal title to that certain spring of water . . . situate on the lands of said defendants near the northeast corner of the northeast quarter of the northeast quarter of section 18 . . . and of and to all the waters thereof, and of and to the right to conduct the waters of said spring across, through, and over the lands of said defendants . . . to the lands and premises of said plaintiff. And that said defendants have not, nor have either of them, any right, title or interest in and to the waters of said spring or any portion thereof."

While the judgment does not accurately locate the spring, all the parties agree that it was somewhere in the head of the aforesaid gulch. For many years prior to the judgment the plaintiff in that action and his predecessors in title had conveyed the water in controversy therein through a pipe from a point near the easterly side of the head of the gulch ˉto his lands. The plaintiff herein contends that the water flowing from an excavation at that point constitutes the spring referred to in said judgment. The defendants' contention is that the whole head of the gulch constitutes the spring referred to and that the excavation mentioned is a mere sump for the collection of the water for diversion through the pipe-line. Witnesses for the plaintiff herein testified that the water which the defendants diverted arose from the bottom of the excavation. The defendants' witnesses testified that water was drained from across the head of the gulch into the excavation. Some seventy feet from the excavation, and at an elevation of about ten feet lower, water naturally comes to the surface in two places which the plaintiff contends are springs. They are referred to by the witnesses as plaintiff's springs number 1 and number 2. In the dry year of 1924 the water in the excavation failed, whereupon the defendants enlarged and deepened the excavation and dug a ditch across the head of the gulch, through which they increased the flow of water into the excavation, and they also lowered the intake end of their pipe-line, with the result that the plaintiff's spring ceased to flow. The defendants introduced evidence to show that they had always maintained a ditch across the head of the gulch, but it is admitted that in 1924 they enlarged and deepened it. The plaintiff brought this action to enjoin the aforesaid interference with the natural flow of water through her land and for damages. Judgment was entered in her favor and the defendants have appealed.

Appellants contend that the spring mentioned in the judgment of 1902 embraced the whole head of the gulch and gave their predecessors in interest the right to all the water percolating through the gravel and soil therein. Depending upon the intention of the parties to a grant, the word "spring" may have a meaning as comprehensive as that for which appellants contend. (*Harrison* v. *Cha-*

*boya,* 198 Cal. 473 [245 Pac. 1087].) But there is evidence in this case that both before and after the entry of the judgment of 1902 the plaintiff was using the water flowing from springs number 1 and number 2. There is also testimony of both experts and laymen that such springs are "independent springs and not a part of the Dungan spring." There is evidence, as stated, to the effect that, prior to the digging of the ditch across the head of the gulch, the water diverted through the defendants' pipe-line came up from the bottom of the excavation mentioned and that the main flow of water into the ditch, after it was enlarged and deepened, was at the middle thereof. It is a natural inference from such evidence that the diversion of this flow caused the plaintiff's springs to dry up. It cannot be held that the trial court was not warranted in finding in favor of the plaintiff on the issue under discussion.

■  Appellants contend that the court erred in overruling their objection to the admission in evidence of the transcript of the testimony of a witness, now deceased, who testified at the trial of 1902.

"In order to render the testimony of a deceased witness admissible on a second trial, it is generally agreed that there should be a substantial identity of parties,—the word 'parties' as thus used comprehending privies in blood, in law, or in estate. . . . Within the rule that former testimony is admissible where the parties to the subsequent action are privies of the parties to the prior suit, the term 'privies' means persons claiming under the former parties." (10 R. C. L. 970; 10 Cal. Jur. 1128; Code Civ. Proc., sec. 1870, subd. 8; *Briggs* v. *Briggs,* 80 Cal. 253 [22 Pac. 334]; *Howell* v. *Budd,* 91 Cal. 342 [27 Pac. 747]; *Fredericks* v. *Judah,* 73 Cal. 604 [15 Pac. 305]; *Gates* v. *Pendleton,* 71 Cal. App. 752 [236 Pac. 365].) Appellants contend, however, that while the general subject of controversy in the two actions is the same, the particular question of what constitutes the spring described in the judgment was not in issue in the former action. But the court necessarily must have determined in that case what constitutes the spring before adjudging to whom it belonged. It needs no · citation of authorities to show that the subject matter of a suit must be ascertained before the rights of the parties therein can be determined.

The witness whose testimony at the trial of the former action was read in evidence was a witness for the plaintiff Dungan, therein and had formerly owned the Dungan lands and had diverted the water thereto from the spring in question. He testified:

"I purchased a spring from Mr. McAlister (plaintiff's predecessor in title) during the time I owned and lived upon that land. Q. Take the pointer and locate the spring you purchased of him upon the map (evidently referring to a map used at the trial and introduced in evidence at the trial of the present case, on which map the excavation mentioned is marked 'spring,' but which does not show any ditch across the head of the gulch). . . . A. The spring is marked here 'spring.' . . . I talked with .Mr. McAlister. He had some springs up there under that foothill, and he said he would let me have one . . . There was a box made, the spring was dug out, and there was a box sunk in the spring to take the water from. The pipe was laid from the spring. . . . That was somewhere about 8 or 9 years ago. . . . I know where the spring is. I dug it out, laid the pipe down and worked upon it a good deal."

The foregoing testimony tends strongly to prove that the excavation mentioned constitutes the spring in controversy in the former action and that it was only one of several springs arising in the head of the gulch.

The only other point urged for a reversal is that the court failed "to fix or establish the amount of water which defendants were entitled to take from their said spring." But this is not an action for the division of the water of the spring. The judgment in this action, as well as that in the former action, gives the defendants the right to the use of all the water of the spring. While the flow of water from the spring is variable, the judgment is fixed and certain.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 11, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1930.