IOWA STATE SAVINGS BANK OF MALVERN, Appellant, v. T. R. YOUNG et al., Appellees.

No. 41175.

1288

Carl H. Cook, for appellant.

C. E. Dean and Genung & Genung, for appellees.

De Graff, J.—The plaintiff-appellant, hereinafter referred to as the Bank, held two notes against the defendant Young, one in the principal sum of $3000 and the other in the principal sum of $1600, both secured by mortgage on real estate. None of the money loaned by the Bank to Young had been used in the purchase of the stock of merchandise sold. The notes were due and unpaid at the time the suit was brought.

The defendant Young was the owner of a stock of groceries at Glenwood, Iowa. The business had formerly been operated by the defendant Davis, and when Davis sold to Young, Davis retained the meat market division of the store, while Young operated the grocery department, both being housed in the same building. When Davis sold to Young, there was a verbal agreement between Davis and Young that Young would not sell to any other person without first giving Davis an opportunity to buy back the grocery business, or unless he could sell it to someone whose presence and ownership would be satisfactory to Davis.

In the latter part of November and the early part of December, 1929, Young advised Davis that he was dickering with the defendant Merritt Taylor for the sale or the trade of said

stock of groceries, and by the terms of the contemplated purchase and sale, Young was to trade or exchange the stock of merchandise, free and clear of all liens and encumbrances, for an oil station at Carroll, Iowa, belonging to the defendant Taylor, at the agreed price of $3000. Young was to pay, or cause to be paid, a certain $500 chattel mortgage against the stock of goods and some $700 worth of wholesale bills against Young for goods purchased for the store, and to secure the payment thereof, Young was to execute a mortgage to Taylor in the sum of $1200 on the oil station to be traded by Taylor to Young for the stock of merchandise.

The defendant Davis was advised of the activities of Young and Taylor and made some effort to induce Young to sell him the stock of merchandise for $2500, but without avail. The defendants Young and Taylor, on the 3rd day of December, 1929, made their contract, and on the next day, the stock of merchandise was placed in the possession of the defendant Davis, because Taylor had told Young, when he made his contract, that he had already sold the business to Mr. Davis. Davis bought the property for $2900. He paid the Iowa Fruit Company, Paxton & Gallagher, and McCord Brady, who were wholesale creditors, $992.84, and paid off the mortgage of $500 to the bank, a total of $1492.84, and paid unto the defendant Taylor $1433.48.

The appellant complains of the action of the court in dismissing its suit in the following particulars: (1) It was at least entitled to judgment against Young, the maker of the notes, for the full amount of its debt, interest and costs of suit; (2) it was a creditor of the defendant Young at the time Young sold to Taylor and Taylor to Davis, and under the circumstances of the case, was entitled to a decree holding Davis, as receiver, accountable for the value of the merchandise.

The appellees claim that the term "creditors" in the bulk sales statute applies only to merchandise creditors, and that therefore the Bank is not entitled to any relief under the bulk sales law; that since the Bank was only a creditor of Young's, and not a creditor of Taylor's, the sale from Taylor to Davis cannot be attacked; and that since the Bank had a mortgage on real estate securing the payment of Young's indebtedness, it is not protected by the bulk sales law.

■ Before proceeding to a discussion of the rights of the parties under the bulk sales law, we shall dispose of the contention of the appellant that it was entitled to a judgment against Young on the notes sued on. The record is conclusive that Young had signed the notes, and it is likewise conclusive that the Bank was the owner thereof. There is no denial of the genuineness of the signature, nor is there any denial of the defendant Young's liability to the Bank on the notes sued on. The evidence is conclusive that the notes are due and unpaid. We can see no reason why the plaintiff Bank is not entitled to a judgment in its favor against the defendant Young for the principal amount and interest of the notes. While a suit on the notes without an effort to foreclose the mortgage is essentially a law action, nevertheless no objection was made by the defendant Young to the trial of the issues joined by a court of equity. We hold, therefore, that the plaintiff Bank was entitled to a judgment against the defendant Young for the unpaid principal and interest of the notes sued on.

■ The history of the bulk sales law legislation in this state began with the laws of the 34th General Assembly (Chapter 150), and went into effect on the 4th day of July, 1911. The title to the Act is as follows:

"An Act to regulate the sale or disposal of stocks of goods, wares, or merchandise in bulk, and to provide a penalty for the violation thereof. [Additional to Chapter 4 of Title XIV, relating to transfer of personal property.]"

There had been some changes in the law, and at the time of the transactions complained of in this appeal, the bulk sales law was in the form passed by the 37th General Assembly, Chapter 64. The law, when first enacted, contained the following:

"All such sales, assignments, or deliveries of commodities which shall be made without the formalities required by the provisions of Section 1 hereof will be presumed to be fraudulent and void as against all persons who were creditors of the vendor at the time of such transaction."

In the Supplement to the Code of Iowa, 1913, and the Supplemental Supplement of 1915, the law was preserved with

minor changes and codified under Chapter 4 of Title 14, a chapter relating to the transfer of personal property. The law was later amended, but in no place in the amendment to the law is there any indication that the legislature intended to restrict creditors to that class whose property had been purchased by the merchant for the conducting of his business or to that class of creditors whose money had been loaned for the purpose of carrying on the particular business. On the contrary, the law as it now exists contains language as follows: ''Shall be void as against the creditors of the seller.''—''A written list of names and addresses of the creditors of the seller''—''Certified * * * to be a full, accurate and complete list of his creditors, and of his indebtedness''—''Notify personally or by registered mail, every creditor whose name and address are stated in said list, or of which he has knowledge''—''Upon application of any of the creditors of the seller''—''Be held accountable to such creditors''—''Accountable to any creditor of the seller.''

The Act specifically excepted certain ''sellers'' from the operation of its terms, to wit: executors, administrators, receivers, trustees in bankruptcy or any public officer under judicial process; it made no exception with respect to creditors; and we do not feel called upon to read into the statute an exception which was not made by the legislature, but which, on the other hand, might do violence to the terms ''all'' and ''any'', adjectives referring to ''creditors.''

Another consideration which impels us to the conclusion just announced is that the Act, in its original form and before its codification, was made additional to Chapter 4 of Title 14 of the Code, a chapter relating to the sale and transfer of personal property. That chapter applies to all creditors without notice who were such at the time of the sale or transfer of the personal property.

We can see no reason in principle why we should hold the Act applicable only to merchandise creditors and the like and exclude other creditors therefrom. Ordinarily the merchandise creditor retained no title to the goods sold prior to any legislation relative to sales in bulk, but, on the contrary, sold the goods to the merchant from his wholesale store on the financial credit of the merchant alone, and thereby parted with both title and possession. The butcher, the baker, the grocer, the clothier,

and all other persons who sold goods to the merchant, whether for use in the store or for the use of himself and family, relied upon the financial standing and credit of the merchant. The fact that he was a merchant and carrying on a mercantile business in the community undoubtedly induced other merchants or financial institutions to either grant him credit *in præsenti* or extend the time of payment of indebtedness created prior to his entry into the mercantile field. To prevent a merchant who had thus gained the confidence of not only wholesalers, but also retailers, financial institutions and the like, from selling all of his visible assets to another, and thereafter concealing from his creditors the money which he had received in payment therefor, the bulk sales law was passed. If it did not protect all creditors as well as merchandise creditors, the evil sought to be corrected by the legislation would be remedied only in part. And we are inclined to hold that under the wording of our statute, the bulk sales law was passed for the protection of all creditors. This seems to be in conformity with the weight of authority (27 C. J. 878, Section 888 and Notes); and it has been held that a bulk sales law which does not apply to all creditors alike is unconstitutional, as contravening the 14th Amendment to the Constitution of the United States. See McKinster v. Sager, 163 Ind. 671, 68 L. R. A. 273. We prefer to adopt the language of the Indiana Supreme Court in the case just cited:

"Why then should the class of creditors described in the statute have an equity to take all, as against the various employees engaged in transacting the business, as against the owner of the building so used, or even as against those who have supplied the creature needs of the merchant and his family while he was engaged in the prosecution of the business? Suppose that, in point of fact, the amount realized by a merchant on a sale of goods purchased by him on credit could be shown to have been used by him in the purchase of groceries for his family, and that during some other portion of the time of his business endeavor he had incurred a debt in supplying his family with necessary groceries; can any reason be suggested why, as to the stock on hand at the time of the sale in bulk, the wholesaler should be entitled to his pay in full as against the

grocer, when neither of them contributed to the stock as it was at the time of the failure?''

Along the same lines, see Johnson Bros. Co. v. Washburn, 77 So. 461 (Ala.); Galbraith v. Oklahoma State Bank, 130 Pac. 541 (Okla.); Escalle v. Mark, 183 Pac. 387 (Nev.).

In Peoples Savings Bank v. Van Allsburg, 131 N. W. 101 (Mich.), an Act very similar to that under consideration was construed by the court. The statute provided that the sale should be void as against the creditors of the seller unless the statutory notice is made, giving a full, accurate and complete list of his creditors. The Act further provided that if the purchaser did not comply with the provision of the Act, upon application of any of the creditors, he should become a receiver, etc. In holding the Act applicable to all creditors, whether merchandise or otherwise, the Supreme Court of Michigan said:

''If the legislature intended to restrict the notice to any particular class of creditors, it did not so indicate by the language used. The language made use of is clear and free from ambiguity, and no room is left for the contention that the legislature intended it to apply to any particular class of creditors.''

It seems to us, upon reasonable authority, that the statute under consideration should be interpreted to apply to all and any creditors of the seller.

Left for our consideration is the question as to whether or not, under the circumstances of this case, it can be successfully maintained that the defendant S. C. Davis purchased the merchandise from Merritt Taylor, instead of T. R. Young, and that the Bank was not the creditor of Merritt Taylor, and therefore cannot hold the defendant Davis as a receiver. The undisputed facts in the record disclose that the defendant Taylor never took possession of the stock of merchandise. He contracted to buy it on the 3rd day of December, 1929, and turned it over to the defendant Davis on the 4th day of December, 1929. The defendant Young knew he had not complied with the provisions of the bulk sales law; the defendant Taylor knew he had not complied with the provisions of the bulk sales law; the defendant Davis knew that he had not complied with the provisions of the bulk sales law; each of the defendants knew that the other had not complied with the provisions of that law.

We have been called to pass upon a somewhat similar matter in the case of Carnall v. Kramer, 194 Iowa 359. We shall not stop to recite the facts in that case, but in holding contrary to the contention here made, we said:

"The appellants well knew that the stock of goods belonged to Kramer and Becker. They were on the ground and were familiar with the fact that the deal between Kramer and Countryman was hanging fire over the adjustment of the chattel mortgage. They claimed to have made inquiry in regard to creditors who might have claims against the stock. They had actual notice that they were purchasing the stock of Kramer and Becker through the medium of the transaction with Countryman and Redeman. They were clearly chargeable with facts and circumstances sufficient to bring to them knowledge that they were buying the stock of Kramer & Becker, and to require them to comply with the provisions of the Bulk Sales Act in ascertaining and notifying the creditors of Kramer & Becker."

It appears to us in the case at bar that the defendant Davis had actual notice that he was purchasing the stock of the defendant Young through the medium of the transaction with the defendant Taylor. Davis knew that Young owed some debts and made inquiry concerning them and paid them by his own check. Taylor paid no debts of the defendant Young's. Davis knew of the provisions of the bulk sales law, as the record discloses. Having bought the stock which was owned by Young, and having recognized the provisions of the bulk sales law as applicable to the transaction, he is not now in a position to say that the sale was made to him by Taylor and that Taylor owed no debts that he, Davis, was required to pay. As we said in the case just referred to, so we say again, that we do not pass upon the question of the rights of one who is, in fact, a good-faith purchaser for a valuable consideration, without notice or knowledge sufficient to put him upon inquiry, from a third person who has likewise bought in good faith from the original owner of the stock. We hold, however, that the facts and circumstances surrounding the transaction in the instant case are such as to charge the appellees as purchasers under the bulk sales law and to render such sale void under its provisions and

to make the appellee Davis liable to account to the creditors of Young.

In conformity with our holding in the case of Pratt Paper Co. v. Eiffler, 196 Iowa 199, Davis should account to the Bank for the sum of $1996. We reach this conclusion by virtue of the following computations, to wit: $2900 was paid for the stock of goods and fixtures; $500 of the money paid a lien, so that the unsecured creditors would have been entitled to a division of but $2400 of the purchase price. The only two creditors at the time the suit was tried were the Bank, in the sum of $4897.47, and Davis, in the sum of $992.84, the amount he had already paid to unsecured creditors. The Bank, therefore, was entitled to approximately 41% of the $2400,—to be exact, .4074%. This percentage of the amount of the indebtedness held by the Bank, together with the same percentage of the money paid by Davis to unsecured creditors, equals $2400, the net amount in which all creditors should have shared upon the sale of the merchandise and fixtures in bulk.

Upon the question as to whether or not the bulk sales law applies to creditors who are holding security on real estate or otherwise, what we have already said is a sufficient answer: namely, that the bulk sales law applies to all creditors without classification. The payment of a pro rata share of the purchase price of the stock of merchandise to the creditors does not discharge their debt; and if there be any equity in the property against which the security stands which will inure to the benefit of the debtor, his creditors have a right to reach that property by prescribed processes.

The judgment and decree of the trial court is, therefore, reversed, and the court is ordered to enter a judgment in favor of the Bank against the defendant Young for the amount prayed for by the Bank in its petition; a judgment should also be entered in favor of the Bank against the defendant Davis for $1996, which, when paid by Davis, shall be credited upon the judgment against Young; costs should be entered against all of the defendants, jointly and severally, and the costs of the appeal will be entered against the defendants jointly and severally. If the plaintiff-appellant so elects, it may have judgment

in this court in accordance with the provisions of this opinion. —Reversed.

STEVENS, C. J., and FAVILLE, ALBERT, and WAGNER, JJ., concur.