## In re MERCURY ENGINEERING, Inc.
### No. 43619.

District Court, S. D. California,
Central Division.
Oct. 12, 1946.

---

Gendel & Sherman, by Martin Gendel, all of Los Angeles, Cal., for trustee.

James M. Gammon and Cobb & Utley, all of Los Angeles, Cal., for claimant.

YANKWICH, District Judge.

On December 1, 1944, an involuntary petition was filed against Mercury Engineering, Incorporated, a corporation. After hearing had, an adjudication was made on January 3, 1945. On February 12, Arthur E. Barili filed a claim in the sum of $6689.07, upon a judgment of the Superior Court of the State of California, for Los Angeles

County, dated July 12, 1944. The judgment was rendered in an action brought by Barili against Charles B. Taylor as Trustee and others, for the balance due on a promissory note secured by a chattel mortgage on certain equipment and personal property belonging to the bankrupt. It was entered upon a stipulation signed by the parties, which, after reciting the failure to make certain payments, agreed to the entry of a judgment by reason of such default. The judgment recited the default of payment, notice of default and ordered judgment for the whole balance due on the promissory note. To satisfy the judgment, the Court ordered the foreclosure of the chattel mortgage and the sale of the property by the sheriff. The Trustee filed objections to the claim. He also asserted 'in his objections' a counter-claim or set-off. On April 10, 1945, the Referee suspended the hearing on the claim in order to allow the Trustee to assert in a plenary action his set-offs and counter-claims against it. At the same time, he permitted the Trustee to· institute such action. He forbade the Trustee to proceed on his objections to the claim. On petition to review this order, I reversed it, with directions to the Referee to allow the trustee, by proper pleading, to assert the counter-claim. The opinion is reported at 60 F.Supp. 786. On the return of the matter to the Referee, additional pleadings and objecitons were filed by the Trustee asserting the invalidity of the chattel mortgage and judgment therein upon various grounds which will be referred to in the discussion to follow.

On July 13, 1946, the Referee filed his findings of fact and conclusions of law in the matter and an order overruling the objections to invalidity. In substance, he held that Barili had a valid secured claim in the sum of $3657.36. Among other things, the Referee found that the judgment of the Superior Court of the State of California foreclosing the mortgage had become final, that no appeal had been taken from it and that the time for such appeal had expired before the institution of the bankruptcy proceedings and the adjudication. He also found that, at the time of the recording of the chattel mortgage on July 26, 1943, the Department of Employment of the State of California had a claim under the State Unemployment Insurance Act, Gen.Laws, Act 8780d, Secs. 44, 45, for a tax against the bankrupt in the sum of $4.78 as a withholding tax which, while not payable until the quarter ending September 30, 1943, was an obligation from the date the wages became due and payable, namely, July 24, 1943, which· was prior to the recording of the chattel mortgage. The Trustee seeks to review this Order.

With this as a foreground, we approach the questions involved in this review.

The parties have eliminated all questions relating to alleged violation of the provisions of the Emergency Price Control Act of 1942 as amended,[1] and waived findings on the subject. They have also waived all matters relating to alleged set-offs which I had referred to the Referee on the previous review. However, the validity of the chattel mortgage and of the title of the bankrupt to the personal property, which title he claims through the foreclosure instituted prior to the institution of the bankruptcy proceedings is still before me.

The challenge of the ruling of the Referee is grounded upon several alleged infirmities which, under the contention of the trustee, invalidated the chattel mortgage and all subsequent proceedings traceable to it. The chattel mortgage is first challenged because of failure to comply with Section 3440 of the California Civil Code. This is the provision, common to many states, known as the "Stock in Trade Sales Act" and provides in substance that a sale, transfer, assignment or mortgage of stock in trade or fixtures or equipment will be "conclusively presumed to be fraudulent and void as against the existing creditors of the vendor, transferor, assignor or mortgagor, unless at least seven days before the consummation of such sale, transfer, assignment or mortgage, the vendor, transferor, assignor, or mortgagor, or the intended vendee, transferee, assignee or mortgagee, shall record in the office of the county recorder in the county or counties in which the said stock in trade, fixtures

or equipment are situated a notice of said intended sale, transfer, assignment or mortgage, stating the name and address of the intended vendor, transferor, assignor or mortgagor and the name and address of the intended vendee, transferee, assignee or mortgagee, and a general statement of the character of the merchandise or property intended to be sold, assigned, transferred or mortgaged, and the date when and the place where the purchase price or consideration, if any there be, is to be paid; and shall publish a copy of such notice in a newspaper of general circulation published in the township in which such transfer or assignment is intended to be made, if there be one, and if there be none in such township, then in such a newspaper in the county embracing such township, at least once, which publication shall be completed not less than two days before the date of such intended sale, transfer, assignment or mortgage."[2]

■ We need not go into a detailed discussion of this section. It has its duplicate in almost every state in the Union, including the State of New York. California Courts do not seem to have been called upon to determine whether its provisions apply to a purchase price chattel mortgage. But the referee rightly concluded that it did not so apply upon no less an authority than the Circuit Court of Appeals for the Second Circuit, whose opinions upon a matter of this character interpreting a New York statute of identical import with ours command not only respect, but require following when no contrary ruling in our own Circuit appears.[3] This is especially the case when the decision accords with the very philosophy which lies behind the enactment. Its object is to protect the creditors against a surreptitious sale or incumbrance of the chief assets or equipment of a trader. But when the incumbrance is to secure the moneys which represented the price of these assets, the reason for the requirement disappears. For to hold that the seller who, instead of receiving cash, acquires a mortgage on property which he transfers to a buyer, must subordinate his rights to this buyer's other creditors, is to penalize him for supplying to the buyer the very means of carrying on a trade. It would mean to subsidize the existing creditor who may have extended credit on the basis of ownership of other assets at the expense of the man who furnishes the stock in trade or equipment to carry on a business. When we require notice before sale of stock in trade, we do so in order that the basis on which the prior credit had been secured be not dissipated without notice. But when the basis did not exist, but came into being through the very sale and incumbrance, the very foundation for the requirement is gone. Nor is there merit to the contention that the chattel mortgage was invalid because of failure to comply with the requirement of Section 2957 of the Civil Code of California, which calls for recordation in the county where the mortgagor resides and the county where the property is located. Non-compliance with the section either by failure to record or long delay in recording, renders the chattel mortgage invalid as against prior or subsequent creditors.[4] Because the requirement as to recording takes the place of the immediate

[2] California Civil Code, § 3440.

[3] In re Rosom Utilities, Inc., 1939, 2 Cir., 105 F.2d 132. California law favors the vendor by recognizing a lien for his unpaid purchase price. California Civil Code, § 3046; Hinkel v. Crowson, 1922, 188 Cal. 378, 206 P. 58; Edison Securities Co. v. Ventura, etc., Ass'n, 1935, 10 Cal.App.2d 555, 52 P.2d 608; Estate of Reid, 1938, 26 Cal.App.2d 362, 369, 79 P.2d 451. So a ruling which protects against creditors a chattel mortgage given to secure the purchase price of personal property is in harmony with this generous attitude of the law.

[4] Lemon v. Wolff, 1898, 121 Cal. 272, 53 P. 801; Ruggles v. Cannedy, 1899, 127 Cal. 290, 53 P. 911, 46 L.R.A. 371; Loosemore v. Baker, 1917, 175 Cal. 420, 166 P. 26; Williams v. Belling, 1926, 76 Cal.App. 610, 245 P. 455; United Bank & Trust Co. v. Powers, 1928, 89 Cal.App. 690, 265 P. 403; Noyes v. Bank of Italy, 1929, 206 Cal. 266, 274 P. 68; Wolpert v. Gripton, 1931, 213 Cal. 474, 2 P.2d 767; Moore v. Bay, 1931, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198; Swift v. Higgins, 1934, 9 Cir., 72 F.2d 791; Bank of America, etc., v. Sampsell, 1940, 9 Cir., 114 F.2d 211; and see, In re Sachs, 1929, 4 Cir., 30 F.2d 510; General Mo-

delivery and change of possession required in other cases,[5] the Courts have held that this requirement is satisfied only if the recording is done promptly, unless such recording is impractical or the circumstances of the case warrant delay.[6] In giving effect to these rulings, the Referee found that the short delay in recording the chattel mortgage was justified. The conclusion is warranted by the facts.

The claimant here, Arthur E. Barili, for a long time prior to June 26, 1943, owned and operated a machine shop at 722 North Broadway, Los Angeles, California. On that day he sold it as a going concern to Charles B. Taylor, who was acting not for himself, but as Trustee for Mercury Engineering Company, Incorporated, a corporation in the process of formation, for a total sum of $16,000. Barili received $5,000 in cash and the balance was to be evidenced by a promissory note in the sum of $11,000 secured by a chattel mortgage upon the business, machinery and equipment sold. The chattel mortgage is undated, but was acknowledged on June 30th, and delivered to Barili. The company was formed on July 6th and thereafter the machine shop and business were transferred to the new corporation by Taylor, the Trustee. The corporation did not complete its organization and start business until the week ending Saturday, July 4th. During the week, Barili remained at the place of business. The following Monday, July 26th, the chattel mortgage was recorded.

Of course, it could have been recorded before the corporation was organized. But I doubt if any lawyer of experience, especially one experienced in corporate organization, would have advised Mr. Barili to do this. Assume that, through disagreement among the organizers, the organization of the corporation had not been completed, Mr. Barili would have found himself in possession of a chattel mortgage executed by a trustee for a corporation which never came into being. And Mr. Taylor would have found himself as mortgagor of property which was not his.

We need not discuss the potential liability or claims of liability which such a situation might have engendered. Suffice it to say that the organization of a corporation being a condition precedent to the effectiveness of the chattel mortgage, good business sense and sound legal principles called for delay until organization was achieved. So that, granting that the recording "should be had immediately or as soon thereafter as practical upon the execution thereof"[7], we have here full compliance with this requirement. And the Referee was right when he found that, under the circumstances, "there was no unreasonable delay in the recordation of the chattel mortgage herein mentioned, which would void the mortgage under Section 2957 of the Civil Code of the State of California."

I am also of the view that the action instituted in the Superior Court by Arthur E. Barili for the foreclosure of the chattel mortgage, in which, after waiving certain defenses of illegality, a stipulated judgment was entered on July 13, 1944, has become res judicata between the mortgagor and mortgagee and is not subject to relitigation by the trustee, on behalf of the creditors. Notice of entry of judgment was given on July 15, 1944, the sale of the property was ordered, and no appeal was ever taken from the judgment. At the time of the adjudication, December 1, 1944, the judgment had become final. That judgment is binding upon all persons including the trustee herein. This is the law of California,[8] as well as the law in general,[9] and as declared by the Courts of the United States.[10] And the principle applies to a judgment by de-

---

tors Acceptance Corp. v. Coller, 1939, 6 Cir., 106 F.2d 584; Corley v. Cozart, 1940, 5 Cir., 115 F.2d 119.

[5] California Civil Code, § 3440.

[6] Ruggles v. Cannedy, 1899, 127 Cal. 290, 53 P. 911, 46 L.R.A. 371; Williams v. Belling, 1926, 76 Cal.App. 610, 245 P. 455.

[7] Williams v. Belling, 1926, 76 Cal. App. 610, 615, 245 P. 455, 457.

[8] California Code of Civil Procedure, §§ 1908, 1911.

[9] See 30 Am.Jur., Judgments, Sec. 179.

[10] Grubb v. Public Utilities Commission, 1930, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972; Chicot County Drain-

fault [11] or to a stipualted judgment.[12] At best, a defaulting defendant is limited, on appeal, to questioning the jurisdiction of the court or the sufficiency of the Complaint to state a claim.[13] A final judgment, whether in a contested or noncontested action, is conclusive not only as to the matters actually in controversy but upon all matters which might have been litigated in the case, although they were not.[14]

This principle has received recent recognition by the Supreme Court in a bankruptcy matter:[15]

"But we are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata, which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525, 526, 51 S.Ct. 517, 518, 75 L.Ed. 1244. "Before Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487] it was recognized by this Court that, apart from the full faith and credit clause, a judgment duly rendered in one court will be recognized as res judicata in a suit between the same parties in a federal court. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Case v. Beauregard, 101 U.S. 688, 25 L.Ed. 1004; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed 1069; Grubb v. Public Utilities Comm., 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. See Baldwin v. Iowa State Traveling Men's Ass'n, supra, and cases cited; cf. Chicago, R. I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757, 53 A.L.R. 1265; Milwaukee County v.

age District v. Baxter State Bank, 1940, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L. Ed. 329; Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 1942, 7 Cir., 128 F.2d 411, 414; and see, Prudence Realization Corp. v. Ferris et al., 1945, 323 U.S. 650, 651, 654, 655, 65 S.Ct. 539, 89 L.Ed. 528.

[11] Morenhout v. Higuera, 1867, 32 Cal. 289, 296; Ivancovich v. Weilenman, 1904, 144 Cal. 757, 762, 78 P. 268; Reed Orchard Co. v. Superior Court, 1912, 19 Cal.App. 648, 662, 128 P. 9; Paduveris v. Paris, 1931, 213 Cal. 169, 172, 1 P.2d 986; White v. Lantz, 1932, 126 Cal.App. 693, 14 P.2d 1041.

[12] See, Morrow v. Learned, 1926, 76 Cal.App. 538, 245 P. 442; 30 Am.Jur. Judgments, Secs. 463, 464; Woods Bros. Construction Co. v. Yankton County, 1931, 8 Cir., 54 F.2d 304, 308, 81 A.L. R. 300; O'Cedar Corporation v. F. W. Woolworth Co., 1933, 7 Cir., 66 F.2d 363.

[13] Reed Orchard Co. v. Superior Court, 1912, 19 Cal.App. 648, 662, 128 P. 9; Yankwich on Pleading and Procedure, 1926, Secs. 200–202.

[14] Crew v. Pratt, 1897, 119 Cal. 139, 147–149, 51 P. 38; Purcell v. Victor Power & Mining Co., 1916, 29 Cal.App. 504, 510–512, 156 P. 1009; Estate of Clark, 1923, 190 Cal. 354, 360, 212 P. 622; Carr v. Bank of America, etc., Ass'n, 1938, 11 Cal.2d 366, 371, 79 P.2d 1096, 116 A.L. R. 1282; Kupfer v. Brawner, 1942, 19 Cal.2d 562, 564, 122 P.2d 268; Seidell v. Anglo-California Trust Co., 1942, 55 Cal.App.2d 913, 918, 132 P.2d 12; Society of California Pioneers v. McElroy, 1944, 63 Cal.App.2d 332, 340, 341, 146 P.2d 962. "Successors in interest" are the "same parties": California Code Civ.Proc. §§ 1909, 1910; Briggs v. Briggs, 1889, 80 Cal. 253, 22 P. 334; Gates v. Pendleton, 1925, 71 Cal.App. 752, 759, 236 P. 365; McAlister v. Dungan, 1930, 108 Cal.App. 185, 188, 291 P. 419. And the foreclosure of a chattel mortgage, being a proceeding in rem (Broom v. Armstrong, 1890, 137 U.S. 266, 278, 11 S.Ct. 73, 34 L.Ed. 648), the judgment determines the title to the mortgaged property as to the whole world: California Code of Civil Procedure, § 1908(1); see, Title, etc. Restoration Co. v. Kerrigan, 1906, 150 Cal. 289, 314, 88 P. 356, 8 L.R.A.,N.S., 682, 119 Am.St.Rep. 199; State v. Security Savings Bank, 1921, 186 Cal. 419, 425, 426, 199 P. 791; Park v. Powers, 1935, 2 Cal.2d 590, 598, 42 P.2d 75. Creditors had the right to intervene in the action. By such intervention they could not litigate the validity of the note and mortgage between the original parties. But they could "demand judgment protecting their interests and preventing enforcement of judgment to their prejudice". Sullivan v. Vera, 1932, 125 Cal.App. 303, 309, 13 P.2d 770, 772.

[15] Heiser v. Woodruff, 1946, 66 S.Ct. 853, 856, 90 L.Ed. ——.

M. E. White Co., 296 U.S. 268, 272, 273, 56 S.Ct. 229, 80 L.Ed. 220. It has been held in non-diversity cases, since Erie R. Co. v. Tompkins, that the federal courts will apply their own rule of res judicata. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402, 60 S.Ct. 907, 917, 84 L.Ed. 1263; Jackson v. Irving Trust Co., 311 U.S. 494, 503, 61 S.Ct. 326, 330, 85 L.Ed. 297. This Court has also required that effect be given in both state and federal courts to a plea of res judicata arising from decrees of a bankruptcy court. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Chicot County Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329."

The one departure sanctioned by the Supreme Court in the above case in bankruptcy relates to *actual fraud*. No such fraud to vitiate the chattel mortgage or the judgment to foreclose it has been proved in the case. None exists, in fact. And the invalidity asserted because of non-compliance with Sections 3440 and 2957 of the Civil Code of the State of California is not the fraud which the majority of the court in Heiser v. Woodruff, supra, had in mind and which could be litigated by the trustee.

It follows that, in this respect, also, the conclusion of the Referee cannot be impeached.

The only debt which came into being between the date of the execution of the chattel mortgage and its recordation on July 26, 1943, was the sum of $4.78, due to the Department of Employment of the State of California as a payroll withholding tax which became due on July 24, 1943—that is, two days prior to the recording of the chattel mortgage. The claimant insists that this tax liability did not create a debtor-creditor relationship between the State of California and the bankrupt, and that, therefore, the relief should be denied to the Trustee upon that ground also.

 A tax or any exaction in the nature of a tax, while not strictly a debt, is none the less a demand or claim of a quasi-contractual nature, provable in bankruptcy.[16] And the Governmental body levying the tax or exaction is a creditor "as one" who owns [such] a demand or claim."[17] As said by the Ninth Circuit Court of Appeals in Ingels v. Boteler, supra:

"Whether a debt or claim is provable in bankruptcy turns upon its status at the time of the filing of the petition. (Sec. 760, Remington on Bankruptcy, 4th Ed.); claims not owing at the time of filing of the petition are not provable. Sec. 807 Remington; Colman Co. v. Withoft, 9 Cir., 195 F. 250, 252; Cantor v. Cherry, 3 Cir., 73 F.2d 188. Sec. 1(9) of the Bankruptcy Act, 11 U.S.C.A. § 1(9), includes, in the definition of 'creditor' anyone who owns a demand or claim provable in bankruptcy. While actually neither demand nor claim, taxes are 'provable' in their nature. Sec. 845, Remington."

If, as the claimant insists, the matter be considered from the standpoint of state law, the result is the same. For by very statutory definition, in California, a creditor is "one in whose favor an obligation exists, by reason of which he is, or may become entitled to the payment of money."[18] And the courts of California, in giving effect to this definition, have adopted the rather liberal policy of considering a creditor anyone who has any claim or demand which gives him a right to demand or recover a sum of money, on any account whatever, either on tort or contract, and whether liquidated or not.[19] Clearly, a demand by a Governmental

---

[16] Bankruptcy Act, § 63, sub. a(4), 11 U.S.C.A. § 103, sub. a(4); 8 C.J.S., Bankruptcy, § 415; 2 Remington on Bankruptcy, 4th Ed., § 797; see, Zimmern v. United States, 1936, 5 Cir., 87 F.2d 179; Ingels v. Boteler, 1938, 9 Cir., 100 F.2d 915, 918, affirmed in Boteler v. Ingels, 1939, 308 U.S. 57, 58, 60 S.Ct. 29, 84 L.Ed. 78; In re Oshkosh Foundry Co., 1939, D.C.Wis., 28 F.Supp. 412; In re Mid America Co., 1939, D.C. Ill., 31 F.Supp. 601.

[17] United States v. Bernstein, 1926, 8 Cir., 16 F.2d 233, 235; Bankruptcy Act, § 1(11), 11 U.S.C.A. § 1(11).

[18] California Civil Code, § 3430.

[19] Cardenas v. Miller, 1895, 108 Cal. 250, 258, 39 P. 783, 41 P. 472, 49 Am.

body of the type here involved comes within this definition. And the State of California was a creditor who could have sued to recover on it.[20] The assertion to the contrary cannot be approved.

The order of the Referee is affirmed.

St.Rep. 84; Boyer v. United States Fidelity & Guaranty Co., 1929, 206 Cal. 273, 274 P. 57; Potts v. Mehrmann, 1920, 50 Cal.App. 622, 625, 626, 195 P. 941; Schwartz v. Brandon, 1929, 97 Cal. App. 30, 37, 275 P. 448; Malaquias v. Novo, 1943, 59 Cal.App.2d 225, 231, 138 P.2d 729. There is nothing in Southern Service Company, Ltd., v. Los Angeles County, 1940, 15 Cal.2d 1, 10, 97 P.2d 963, 969, to the contrary. There, the Court was discussing an Act of the Legislature relating to credit or refund for taxes. In sustaining the legislative power to deal with absolute freedom with this purely statutory remedy, the Court used this language: "The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights." As the court was ruling against the contention that the statute created a contractual relation which could not be constitutionally impaired, this language does not modify the California statutory definition of "creditor" or weaken the cases just cited, which apply that designation to any person or agency having a claim of whatever nature which can be transmuted into a money demand. And, in addition to the cases under the Bankruptcy Act, cited in Note 16, warranting a broad interpretation of the words "debt" and "creditor", we have two decisions of the highest courts in North Dakota and Kansas in which, in interpreting similar "stock in trade" or "sales in bulk" statutes, it is held that a taxing body is a creditor. See, Lindstrom v. Spicher, 1925, 53 N.D. 195, 205 N.W. 231, 41 A.L.R. 968; Richards-Conover Hardware Co. v. Sharp, 1939, 150 Kan. 506, 95 P.2d 360. These cases have received the approval of the District Court of Appeals of California in, at least, one case. See, Douglas Aircraft Co. v. Byram, 1943, 57 Cal.App.2d 311, 315, 134 P.2d 912. And, generally, in interpreting statutes of this character, the courts have construed the word "creditors" to apply not only to what they call strictly "mercantile creditors," but to all creditors. See, Hartwig v. Rushing, 1919, 93 Or. 6, 182 P. 177; Huckins v. Smith, 1928, 8 Cir., 29 F.2d 907; Iowa State Savings Bank of Malvern v. Young, 1932, 214 Iowa 1287, 244 N.W. 271, 84 A.L. R. 1400. And see Note, Character or Class of Creditors within interpretation of Bulk Sales Act, 84 A.L.R. 1406.

20 The California Unemployment Insurance Act, Act 8780d, Deering's General Laws of California 1939 Supplement, specifically makes the employer liable, in a civil action, for both his and the employee's contribution to the unemployment fund. Section 45 of the Act reads:

"Such employer and worker contributions, interest and the penalties hereinafter provided for shall be collectible by civil action in the name of and by the commission against the defaulting employer, in addition to any other procedures prescribed by this act."