**BUDGET FINANCE PLAN, Inc. v. ENGLAND.**

No. 11856.

United States Court of Appeals
Ninth Circuit.

Oct. 8, 1948.

Carroll F. Jacoby, of San Francisco, Cal., for appellant.

Max H. Margolis, of San Francisco, Cal., for appellee.

**60**

Before STEPHENS, HEALY, and ORR, Circuit Judges.

HEALY, Circuit Judge.

This appeal arises out of a proceeding in bankruptcy in which appellant sought unsuccessfully to reclaim certain chattels in the possession of the trustee, appellee here.

On February 18, 1947, appellant loaned the bankrupt $5,000 on the security of a chattel mortgage on three motor vehicles. At that time the vehicles were severally under mortgage to three other lenders to secure obligations of the bankrupt in the total sum of $4,024.30. These lenders held the legal title to the vehicles. On the date mentioned appellant paid off the existing encumbrances by remittances made directly to the legal owners, and subsequently received from the latter the endorsed certificates of title, or "pink slips" as these are commonly called. The precise date the pink slips were surrendered to appellant is not shown, but the record suggests that it could not have been more than a few days after February 18. On March 21, 1947, thirty-one days after execution, appellant forwarded to the Department of Motor Vehicles at Sacramento a certified copy of its mortgage, plus the endorsed pink slips and the necessary fees. On May 19, 1947, the mortgagor was adjudicated a voluntary bankrupt. Thereafter the trustee took possession of the motor vehicles.

The referee found that the mortgage was not offered for registration within a reasonable time after its execution and was therefore void against all creditors who became such prior to the date of filing. Appellant's petition for reclamation of the vehicles was accordingly denied. On a proceeding to review the district court confirmed the referee's findings and order.

The appeal raises two questions, (1) whether the deposit of the mortgage with the Department was unreasonably delayed under the circumstances shown, and (2) whether a refinancing mortgage falls within the intendment of the controlling statutes, namely, §§ 195 and 196 of the California Vehicle Code.[1]

In Bank of America Nat. Trust & Savings Ass'n v. Sampsell, 9 Cir., 114 F.2d 211, we reviewed the California cases bearing on the interpretation of § 195 and reached the conclusion that a mortgage on motor vehicles which is not promptly filed with the Department is void as to creditors, and as to subsequent purchasers and encumbrancers, whose interests arise prior to the date of compliance with the statute. Appellant concedes that this holding correctly reflects the state law. It contends, however, that this case comes within an exception or exceptions to the rule announced. Its first point is that circumstances may warrant or excuse delays in complying with the statute, as was held in In Re Mercury Engineering, Inc., D.C.S.D.Cal., 68 F.Supp. 376, and Citizens Nat. Trust & Savings Bank of Los Angeles v. Gardner, 9 Cir., 161 F.2d 530. In those cases there were circumstances which were thought to relieve the mortgagees of the necessity of an immediate recording. Appellant claims to have an equally valid excuse here. It says that it held the chattel mortgage in its office after February 18 "for the sole reason that it was conscious of the fact that the motor vehicle department would not accept the same for registration" in the absence of the "white slips," or certificates of registration, which were at the time out of appellant's control.

There is some evidence in the record of that attitude on the part of the Department.

---

[1] Section 195. "No chattel mortgage on any vehicle registered hereunder irrespective of whether such registration was effected prior or subsequent to the execution of such mortgage, is valid as against creditors or subsequent purchasers or encumbrancers until the mortgagee or his successor or assignee has deposited with the department, at its office in Sacramento, a copy of said mortgage with an attached certificate of a notary public stating that the same is a true and correct copy of the original, accompanied by a properly endorsed certificate of ownership to the vehicle *. * * *".

Section 196. "When the chattel mortgagee, his successor or assignee, has deposited with the department a copy of the chattel mortgage as provided in section 195 hereof, such deposit constitutes constructive notice of said mortgage and its contents to creditors and subsequent purchasers and encumbrancers but such mortgaged vehicle shall be subject to a lien as provided in Division VIII hereof."

When the mortgage was executed the registration certificates were in the possession of a division of the Department for annual renewal and were not returned to the bankrupt or received by appellant until a date considerably later than March 21, 1947. However, as appellee points out, the endorsed certificates of ownership were in appellant's possession within a very few days after the execution of the mortgage, and appellant was in a position to comply promptly with the requirements of § 195. That statute does not contemplate or require the furnishing of the registration certificates; and § 196 makes it clear that constructive notice is effected by the deposit of a certified copy of the mortgage and a properly endorsed certificate of ownership of the vehicle. Had appellant promptly deposited with the Department the documents at hand its lien would have been protected. It ultimately sent in those documents anyway, without waiting further for the white slips, and it could as readily have done that at the outset.

The second point is that the mortgage should be assimilated to a purchase-money mortgage, where the loan is made to enable the mortgagor to acquire new assets. In Citizens Nat. Trust & Savings Bank of Los Angeles v. Gardner, supra, and In re Mercury Engineering, Inc., supra, distinctions were drawn, as regards the policy of the recording statutes, between the ordinary mortgage and a purchase-money mortgage. These authorities are distinguishable. In this instance no new assets were acquired by the bankrupt. The latter already had at least as great an equity in the vehicles as he retained afterwards. He accomplished no more than the refinancing of existing encumbrances, increasing the amount thereof somewhat in the process. The policy behind the requirement of prompt recording is one of hostility toward secret liens. Cf. Bank of America Nat. Trust & Savings Ass'n v. Sampsell, supra. In the absence of justifying state decisions we do not feel warranted in carving out new exceptions making further inroads upon the statutory policy.

Affirmed.

