A. F. EVANS et ux., appellees, v. HENRY HERBRANSON et al., appellants.

No. 47586.

(Reported in 41 N.W. 2d 113)

FEBRUARY 7, 1950.

Frank R. Miller and Floyd S. Pearson, both of Decorah, for appellants.

Isadore Meyer, of Decorah, for appellees.

BLISS, C.J.—Since judgment and decree was rendered on the pleadings, and without evidence introduced, the facts stated herein are from allegations and admissions in the pleadings, and some statements of fact in the printed arguments of defendants. On February 23, 1949, plaintiffs filed their verified petition in equity, alleging that: on March 10, 1948, the Herbransons executed and delivered to plaintiffs their promissory note of said date for $1000, bearing annual interest at four per cent, of which $200 was payable March 10, 1949, and the balance on August 10, 1949, with the written proviso on the note that "if store is sold before said date, this note becomes payable at once" (copy of note was attached to petition); the Herbransons operated the store and maintained its stock from about March 15, 1948 to about January 8, 1949, when they sold and transferred said store, stock and fixtures to the defendants Bergesons, thereby maturing plaintiffs' said note on which there was due and unpaid on February 21, 1949, the sum of $1037.85; the Bergesons have since kept possession of said property; the said sale and transfer in bulk to the Bergesons was void as against the creditors of the Herbransons and a violation of the Bulk Sales law of Iowa (chapter 555, Code of 1946) in that said buyers did not demand and receive of said sellers a complete written list, certified and sworn to by them as true, of the names and addresses of all their creditors with the amounts owing to each, and in that the

sellers did not, at least seven days before the sale, make a full, detailed inventory showing the quantity, so far as possible, with the exercise of reasonable diligence, and the cost price of each item to be included in the sale, and in that the said buyers did not give notice to each creditor of the sellers of the proposed sale and of the price, terms and conditions thereof, as provided by the terms of said Bulk Sales law; the said buyers, without complying with the provisions of said law, paid to the sellers the purchase price of said property; under said law, the plaintiffs have an interest in and a lien upon said stock and fixtures now in the possession and control of said buyers, which interest is in danger of being materially impaired unless a receiver is appointed by the court to take charge of same; the value of said stock and fixtures, as plaintiffs are informed and believe, is $7500. Plaintiffs prayed judgment on their note against the Herbransons, with costs and statutory attorney fees, and for the appointment of defendant Edward Bergeson, or other suitable person in the event Bergeson should not qualify, as receiver under duly approved bond of $3000, to take charge of said property and properly account therefor to the court for the benefit of the sellers' creditors, and that upon final hearing the plaintiffs have judgment against defendants for the amount of their claim, and that their lien and right to said property, or the proceeds or value thereof, be established and confirmed as prior and paramount to that of any other persons, and that the receiver be required to account to plaintiff for said property or its proceeds or value, and that the same be applied in payment of its claim, and for general relief.

The defendants Bergesons filed verified answer, admitting the sale of the store, stock and fixtures by the Herbransons on January 8, 1949, and denying all other allegations of the petition and amendment. In the answer they affirmatively alleged that: plaintiffs knew of said sale prior to January 27, 1949, and employed attorneys, who, on said date, filed petition for plaintiffs in a law action against the Herbransons on said note for $1000, to which they (Bergesons) were not made parties, and had no notice or knowledge of the indebtedness declared upon; on February 23, 1949, plaintiffs dismissed said cause of action without prejudice, and on the same day commenced this action at bar and

served notice thereof on these answering defendants (the Herb-ransons neither appeared nor pleaded); the defendants had in their possession the balance of the purchase price of said property owed by them to the sellers in the sum of $2500, from January 8, 1949 to January 14, 1949, when it was reduced by $1500 leaving an unpaid balance of $1000, which was paid to the sellers on January 31, 1949, at which time the defendants had no notice or knowledge of the pendency of the law action or of the indebtedness on which it was based; prior to defendants' notice or knowledge of this pending action or of the claim therein, the sellers moved out of Iowa with all of their property into Minnesota, and by said inexcusable delay of plaintiffs in asserting any rights under the Bulk Sales law the defendants were deprived of all opportunity to commence appropriate legal proceedings against the sellers to protect their interests, and were irreparably prejudiced; the plaintiffs waived any alleged failure on the part of the sellers to comply with the Bulk Sales law, and are estopped from claiming any lien upon the property, and have no right, title, lien or interest of any kind in and to said property and are entitled to no lien as creditors of the sellers under the said law, and they are left to their ordinary remedies; the filing of the petition in the law action constituted an election by plaintiffs to hold only the sellers for the sum alleged to have been advanced and secured by said note; plaintiffs failed to pursue their remedies, if any, against these answering defendants with due diligence and within a reasonable time, and have waived any such alleged remedies; and that when defendants purchased the property from the sellers they had no notice or knowledge of any indebtedness from the sellers to plaintiffs, and these defendants were purchasers in good faith.

To the amended answer of defendants, the plaintiffs filed a motion to strike therefrom all affirmative allegations for the reason that they were "irrelevant, immaterial, redundant, pleading of legal conclusions and opinions and not the pleading of ultimate facts, and for the further reason that the same are not proper defensive pleading." The court sustained this motion to strike in all its parts.

In answer to plaintiffs' second amendment to their petition, which broadened the prayer of the latter, to ask that the lien of

plaintiffs on the property be made prior and paramount to claims of other creditors, the defendant alleged that other creditors of the sellers had filed claims and each had equal rights with every other claimant, including the plaintiffs.

Plaintiffs filed motion for judgment on the pleadings on four grounds, to wit: that defendants' answer and amendment thereto presented no defense to plaintiffs' action; that defendants' said pleadings do not deny the signatures on the promissory note sued on, nor is an affidavit filed that the signatures are not genuine or authorized, in conformance to Iowa Rule of Civil Procedure 100; that said pleadings present no issue to the court; and that plaintiffs are entitled to judgment on the allegations of their petition as amended, and the admissions and allegations of defendants' answer as amended, which present no defense thereto.

Upon submission of said motion and oral argument by opposing attorneys, the court, on August 1, 1949, filed its findings, judgment and decree, in substance as follows: It found that the equities were with plaintiffs and that the allegations of their petition were material and true; that defendants wholly failed to comply with the Bulk Sales law, and that the sale of the Herbransons to the Bergesons on January 8, 1949, was wholly void as to plaintiffs, and their claim was established in the amount alleged, together with costs including statutory attorney fees; that Edward Bergeson should be held as receiver and accountable to plaintiffs for all stock and fixtures which came into the possession of himself and Marvel Bergeson, or the proceeds therefrom, and that the lien of plaintiffs thereon should be established and equitable relief given for the enforcement thereof.

The court ordered, adjudged and decreed in accordance with said findings. It established plaintiffs' claim as a lien on the property in the possession of the Bergesons, and on the proceeds thereof, and appointed Edward Bergeson as receiver of said property or its proceeds under approved bond of $2000 to be accountable to the creditors of the Herbransons, and required him to make a full and detailed inventory of the property and its proceeds, and make a true and accurate report of his doings to the court. Judgment was directed to be entered against the Herbransons for the sum of $1037.85 with interest at seven per cent per annum from February 21, 1949, with costs, and that

judgment be entered in favor of plaintiffs against the Bergesons in the same amount, "which when paid by them shall be credited upon the judgment against Henry and Isabeth Herbranson with full rights of subrogation against them" to the Bergesons. The decree held the case open for any further proceedings.

Defendants urge a reversal upon two propositions: first, the court erred in striking parts of defendants' answer and amendment; second, it erred in granting judgment and decree for plaintiffs on the pleadings.

I.   In their printed argument defendants state that "unless otherwise stated the propositions and argument shall apply without repetition to both the court's ruling on the motion to strike and motion for judgment on the pleadings." We will, in general, follow this method of discussion. The motions have some kinship and the grounds for each are basically similar. The allegations of defendants' answer and amendment to it conceal quite as much as they reveal. It is clearly apparent from these pleadings and from defendants' argument that defendants had but one defense to plaintiffs' cause of action, and that was that plaintiffs by their conduct acquiesced in the sale or intended to waive, and did waive, their remedy under the Bulk Sales law, or were estopped to enforce it. That is the defense urged by the defendants repeatedly throughout their argument. They make no contention whatsoever in their argument that either they or the Herbransons complied with the provisions of that statute, or made any attempt to do so. Plaintiffs specifically alleged in their petition as amended the noncompliance of either the sellers or the buyers with any provision of the Bulk Sales law. While defendants in their argument in this court expressly, and by clear inference, state that there was no compliance with the statute, they deny in their answer the allegations of noncompliance in plaintiffs' petition and amendment thereto. The failure of the sellers and the buyers to meet the requirements of the Bulk Sales law was not because of their lack of knowledge of such law. Each of them disregarded its provisions notwithstanding his knowledge of them. When they made their contract they knew of the statute and recognized the need of complying with its provisions. This is clearly established by defendants' admission in the "Statement of Facts" in their printed opening argument, to wit: "The sellers

agreed to comply with the Bulk Sales law, but did not." This statement quite definitely implies that the defendants, likewise, did not comply with the law and did not insist upon compliance by the sellers, and were equally at fault with the sellers. In the oral presentation in this court defendants' attorney stated that there was no compliance with the statute.

Subparagraph 1 of section 555.1, Code of 1946, requires the seller to make a full detailed inventory of the stock, etc. seven days before the sale. Subparagraph 2 requires the purchaser to receive from the seller a written list of creditors, their addresses, and the amounts of the seller's debt to each, certified under oath by the seller to be a true and complete statement of his indebtedness. Subparagraph 3 requires the purchaser, at least seven days before taking possession of the merchandise or paying for it, to notify personally or by registered mail each creditor listed or known to the purchaser, of the proposed sale and its terms. The first paragraph of said section 555.1 provides that unless there is compliance with these subparagraphs, the sale "shall be void as against the creditors of the seller * * *."

Under the record submitted to this court it is beyond fair question that neither the Herbransons nor the Bergesons complied with chapter 555 of the 1946 Code. The motions were orally argued to the able trial court. It is evident that the arguments of defendants in that court were similar to those in this court, in that the defendants therein conceded that there had been no compliance with the Bulk Sales law. There was no such express admission in defendants' pleadings. In its ruling sustaining plaintiffs' motion to strike specified parts of the answer, the court said: "The store was sold to the defendants Bergeson on January 8, 1949, *and there was no compliance with the Iowa Bulk Sales law* and the balance of the purchase price was paid without any notice to creditors." (Italics ours.) The parts of the quotation not italicized were based on the allegations of the answer. The italicized part had no express basis in the answer, and we may rightfully assume that the court based its finding therein on admissions or statements of the defense in oral presentation to the court. The record discloses no challenge to this statement of court by the defendants in the trial, below, and none is made in this court.

The original bulk sales statute was enacted by the Thirty-fourth General Assembly as appears from chapter 150 of its laws, effective July 4, 1911. In that Act (section 2) it was provided that all sales made without compliance with its formalities "will be presumed to be fraudulent and void as against all persons who were creditors of the vendor at the time of such transaction." The Thirty-seventh General Assembly, as set out in chapter 64 of its laws, effective July 4, 1917, repealed certain parts of the first statute and revised other parts. It provided (section 1) that unless its provisions were complied with the sale "shall be void." There have been no material changes in the statute since.

This court has uniformly construed the word "void," as used in the statute, to mean "voidable." Carnall v. Kramer, 194 Iowa 359, 366, 367, 189 N.W. 755; Pratt Paper Co. v. Eiffler, 196 Iowa 199, 202, 203, 194 N.W. 370; Lietchfield Mfg. Co. v. Heinicke, 200 Iowa 958, 960, 205 N.W. 774; Schramm & Schmieg Co. v. Shope, 200 Iowa 760, 761, 762, 205 N.W. 350; and Hronik v. Warty, 205 Iowa 1111, 1114, 217 N.W. 449. In the last-cited case, on page 1114 of the Iowa Report, the court, referring to this statute, stated:

"It is obvious that the purpose of enacting this statute was to reach sales or transfers of personal property which were made with a fraudulent intent on the part of the seller, but which could not be impeached under the law of fraudulent conveyances, since in the latter it is so frequently impossible to prove that the purchaser acted with fraudulent intent. The very purpose of the act is to give publicity to those who have the right to know of intended sales, and to prevent clandestine and quickly made sales. Stuart v. Elk Horn Bank & Tr. Co., 123 Ark. 285 (185 S.W. 263).

"The object of the legislature in enacting the Bulk Sales law was to protect creditors of retail merchants against fraudulent sales by the debtors of their stocks and merchandise. Gorman v. Hellberg, 190 Iowa 728. A sale or transfer that is made without a substantial compliance with the terms of the act is voidable, as against creditors of the seller. Carnall v. Kramer, 194 Iowa 359. If a purchaser is willing to assume the chances that there are no unpaid creditors of the seller, without exacting

the affidavit required by the statute, he must bear the consequences. Pratt Paper Co. v. Eiffler, 196 Iowa 199."

■ ■ As stated above, this legislation was adopted for the protection of the creditors of the seller. It is for the benefit not alone of the merchandise or fixture creditors of the seller but for all his creditors. The statute so states, and we have so held. Iowa State Sav. Bk. v. Young, 214 Iowa 1287, 1291–1293, 244 N.W. 271, 84 A. L. R. 1400 et seq. As between the seller and the buyer the sale is neither void nor a nullity, but it is a valid transaction. Under the statute the sale is voidable only as against the creditors. It is optional with the creditors whether they accept the protection of the statute and take advantage of its remedies and benefits. It is for that reason that the statute requires the buyer to notify his creditors of the sale and its terms, and do so within at least seven days before taking possession. If the provisions of the statute are not complied with in the giving of the required notice, but a creditor of the seller has other notice or knowledge of the sale, he must proceed under the statute within a reasonable time after having such notice or knowledge. If he delays an unreasonable time to the buyer's prejudice, or if he affirmatively acquiesces in the sale, he may thereby waive his rights under the statute, or estop himself to obtain them. This is the law as announced in Schramm & Schmieg Co. v. Shope, supra, 200 Iowa 760, 205 N.W. 350, Lietchfield Mfg. Co. v. Heinicke, supra, 200 Iowa 958, 205 N.W. 774, and Andrew v. Rivers, 207 Iowa 343, 223 N.W. 102. In each of those cases there was no compliance with the statute, but the creditor otherwise had knowledge of the same. In each case the court permitted the defenses of waiver, acquiescence, etc.

In the case on appeal there was no compliance with the requirements of the statute, but on the authority of the three cases last above-cited the defendants allege in their answer certain facts tending to establish their alleged conclusions of waiver, acquiescence and estoppel on the part of plaintiffs. Those are the defenses on which defendants rely. What are the facts alleged in the answer as amended having any tendency to support the conclusions alleged? We note them: Defendants bought the property on January 8, 1949; plaintiffs knew of the sale prior to January 27, 1949; on the last date plaintiffs filed petition at

law on the $1000 note against the Herbransons alone; on February 23, 1949, plaintiffs dismissed the law action, without prejudice, and on the same day filed their petition against the Herbransons and the Bergesons seeking the remedies of the Bulk Sales law; the Bergesons paid $1500 of the purchase price to Herbransons on January 14, 1949, and paid the balance of the purchase price amounting to $1000 to Herbransons on January 31, 1949, and when neither payment was made did they have any notice or knowledge of the pendency of the law action or of the indebtedness of Herbransons to the plaintiffs; the filing of the petition in the law action constituted an election on the part of plaintiffs to hold only the Herbransons liable on the note sued on. Based upon the above-stated allegations of fact the defendants alleged these conclusions in their answer, to wit: the plaintiffs waived any alleged failure on the part of the Herbransons to comply with the Bulk Sales law; plaintiffs are estopped from claiming any lien upon any property purchased by the Bergesons from the Herbransons; plaintiffs have no right, title, lien or interest of any kind to said property; plaintiffs are entitled to no relief as creditors of the Herbransons under the Bulk Sales law; and that plaintiffs failed to pursue their remedies, if any, against the answering defendants with due diligence and within reasonable time and have waived any such alleged remedies.

The trial court in sustaining the plaintiffs' motion to strike the affirmative defensive allegations in the answer as amended stated that defendants' position was not well taken that plaintiffs made an election of remedies in filing petition in the law action for the reason that defendants had no knowledge thereof and did nothing because thereof to their prejudice. With respect to the allegations of waiver based upon the length of time intervening between plaintiffs' knowledge of the sale and the filing of the suit in equity, the court said there was nothing in the record to indicate any undue delay in bringing action, and it was unwilling to say that the elapsed time was an unreasonable delay to proceed under the Bulk Sales law.

We agree with the trial court's conclusion that the allegations of fact in the answer were insufficient to sustain the conclusions of the answer alleging waiver, estoppel, acquiescence,

absence of right to relief under the Bulk Sales law, or in the property, and unreasonable delay in proceeding under the law, all on the part of plaintiffs. But this is perhaps not an answer to defendants' contention that the parts of the answer challenged in the motion should not have been stricken. Under the decisions in Andrew v. Rivers, Schramm &. Schmieg Co. v. Shope, and Lietchfield Mfg. Co. v. Heinicke, all supra, conduct by a creditor tending to show waiver, acquiescence or estoppel by him with respect to the sale or his rights under the Bulk Sales law may have a bearing upon the creditor's right to recover. Having a possible relation to the controversy, they are properly pleadable, even though they may not establish a defense if they are proved. Meredith v. Miller, 209 Iowa 849, 853, 228 N.W. 14; Radtke Patents Corp. v. Tagliabue Mfg. Co., D. C. N. Y., 31 F. Supp. 226; Hansen Packing Co. v. Armour & Co., D. C. N. Y., 16 F. Supp. 784, 787; O'Reilly v. Curtis Pub. Co., D. C. Mass., 22 F. Supp. 359, 361.

We therefore conclude that the said matters were not vulnerable to plaintiffs' motion to strike. Whether, if the motion to strike be treated as a motion to dismiss because the allegations, though admitted to be true, do not constitute a defense we do not pass upon. In view of our conclusion in the next division, that the sustaining by the trial court of plaintiffs' motion for judgment on the pleadings was right and proper, any error in sustaining the motion to strike was not reversible error.

II. In discussing defendants' contention that the court erred in sustaining plaintiffs' motion for judgment for them on the pleadings, much that is stated in the preceding division with respect to the allegations in defendants' answer as amended and to facts stated in defendants' argument, or otherwise admitted, is applicable in this division. Because of our conclusion in Division I hereof that the properly pleaded defensive matters in the answer and amendment thereto should not have been stricken, we will consider those pleadings just as they were filed and with nothing stricken therefrom. Under the motion for judgment the properly pleaded allegations of fact in said pleadings are admitted and accepted as true. Decker v. American University, 236 Iowa 895, 898, 899, 20 N.W. 2d 466; In re Estate of Kennedy, 154 Iowa 460, 464, 135 N.W. 53; Scott v. Wilson, 150 Iowa 202,

206, 129 N.W. 812; State ex rel. Freeman v. Carvey, 175 Iowa 344, 347, 348, 154 N.W. 931, 933. As said in the last-cited case:

"Of the new or affirmative matters pleaded in the answer, it is to be said that the motion for judgment necessarily admits the truth thereof. The petition and answer taken together disclose no material disputes of fact. The real question presented is one of law, and there was no error in so treating it."

▇ So in the case before us. All material facts alleged in plaintiffs' petition and amendments thereto on which they base their case and right of recovery are not in issue or controverted by defendants. Plaintiffs' claim as a creditor of the sellers is evidenced by the $1000 note executed and delivered by the sellers to the plaintiffs, and matured by the sale of the property involved herein. A copy of that note was attached to the petition as an exhibit and made a part of the petition. Defendants in paragraph 1 of their answer denied the allegations respecting the note sued on in paragraphs 1 and 2 of the petition, but never denied the note, as required by rule 100 of the Rules of Civil Procedure, and plaintiffs' claim based on the note, and the amount due and owing thereon is established. The consummation of the sale by the Herbransons of their stock and fixtures, in bulk, and their purchase by the Bergesons and the payment in full of the purchase price are admitted by defendants in their answer. Plaintiffs in their petition specifically alleged the failure of the Herbransons, as sellers, and of the Bergesons, as buyers, to comply with the provisions of the Bulk Sales law. Defendants denied the allegations in their pleadings, but from the finding of the trial court in its ruling on each motion after oral presentation and argument by opposing attorneys, it must be assumed, in the face of defendants' said pleaded denial, that it was orally admitted in open court that there was no compliance with the Bulk Sales law. In oral and printed argument in this court, the defendants stated that there was no compliance. The pleaded denial was thus nullified. All material facts essential to plaintiffs' case and recovery as prayed are put beyond controversy.

The only defense urged against plaintiffs' cause of action, as alleged, are those matters of fact affirmatively pleaded in defendants' answer as amended, which we have collated and set

out in Division I. There is no issue between the parties with respect to these affirmative allegations of fact in defendants' pleadings. By their motion for judgment plaintiffs admitted the truth of these well-pleaded facts, but, nevertheless, contend that they do not state a defense to plaintiffs' cause of action. All material facts being thus conceded and without controversy, the question which came before the trial court was one of law on uncontroverted facts, whether plaintiffs were entitled to judgment on their motion. (Rule 222, R. C. P.) That court rendered judgment and decree for plaintiffs. We agree with the decision of the district court granting the motion.

The parties to the sale transaction disregarded every provision of the Bulk Sales law. If we accept as true the statement for defendants that the sellers agreed to comply with the requirements of that statute, then it is also true that defendants failed to hold the sellers to that agreement. Defendants were not compelled to perform the contract without compliance with the statute by plaintiffs. Not only the sellers but the buyers also ignored the statute. Having purchased and paid for the property without compliance with the statute, they must accept the consequences of their own folly, for that was the proximate cause of all harm that resulted to them. If they did not know that plaintiffs were creditors of their vendors it was their own fault. They contend that they purchased in good faith. But as said in Hronik v. Warty, supra, 205 Iowa 1111, 1116, 217 N.W. 449, 452: "One essential ingredient in the definition of 'a good-faith purchaser' is that he shall comply with the statutory provisions hereinbefore quoted." (Bulk Sales law.)

Under the statute the plaintiffs were entitled to notice of the sale from defendants personally or by registered mail. They learned of the sale from other sources on or before January 27, 1949, on which date they filed petition in the law action. The defendants in that action were the primary debtors and were directly liable, and a recovery would have relieved the purchasers from any liability. 37 C. J. S., Fraudulent Conveyances, section 478, page 1329; Gwinn Bros. & Co. v. Peoples General Store, 269 Ky. 813, 108 S.W. 2d 1001, 1002. Just when the sellers removed to Minnesota with their property does not appear. There is no reasonable basis for defendants' contention that plaintiffs in

filing the law action made an election not to pursue their remedies under the Bulk Sales law or to release defendants and the property purchased from any liability. Defendants had no knowledge of the law action and of course made no payment on the purchase price or did anything to their own prejudice because thereof. The fact that plaintiffs brought the equity suit is some indication that they made no election by suing at law and had no intention of acquiescing in the sale or of waiving any rights under the Bulk Sales law. Plaintiffs did nothing to estop themselves from maintaining the equity suit. As stated in Andrew v. Rivers, supra, 207 Iowa 343, 348, 223 N.W. 102, 104, in which a like defense was held not to have been established, the court said: "Van Vliet [a purchaser] omitted no act, changed no position, and sustained no prejudice from anything done by plaintiff. Plaintiff in no wise, expressly or by implication, renounced or disclaimed his rights under the Bulk Sales law." Plaintiffs had nothing to do with the absconding of the sellers and should not be made liable for loss, if any, resulting thereby to defendants. The only fault charged to the plaintiffs is that they did not notify defendants of their claim, or proceed against them earlier. Of all the participants in the transaction they are the least at fault. They were not notified of the sale by defendants. When they learned of it they sought recovery of the real debtors. Had they succeeded it would have been to defendants' interest. On the other hand the parties to the sale at its very inception knowingly violated a statute which was enacted for the purpose of protecting creditors such as the plaintiffs. Defendants had reason to believe that the sellers had creditors, otherwise they would not have required an agreement from them to comply with the statute. Yet, notwithstanding they knew there might be such unpaid creditors, they carelessly paid the entire purchase. They have, primarily and proximately, themselves to blame for any loss they have suffered or may suffer. Of purchasers in a similar situation, the court in Iowa State Sav. Bk. v. Young, supra, 214 Iowa 1287, 1293, 244 N.W. 271, 274, 84 A. L. R. 1400, 1405, said:

"The defendant Young knew he had not complied with the provisions of the bulk sales law; the defendant Taylor knew he had not complied with the provisions of the bulk sales law; the

defendant Davis knew that he had not complied with the provisions of the bulk sales law; each of the defendants knew that the other had not complied with the provisions of that law."

In 3 Williston on Sales, section 643a, page 472, the author, with reference to a creditor under a bulk sales statute, states: "* * * but there is nothing inconsistent in trying to collect a debt due from the seller, first from one possible asset and if that proves insufficient, then from another. Therefore unless a creditor gives actual assent to the sale, his conduct in order to preclude attack upon the sale within the statutory limits should be such as to afford ground for estoppel, namely justifiable reliance by the buyer on the apparent intention of the creditor."

The affirmative allegations in defendants' pleadings do not state facts sufficient to sustain an estoppel against the plaintiffs.

█  The allegations of waiver, estoppel, acquiescence, absence of right, and the like, standing alone, are mere legal conclusions, and raise no issue, and put upon the opposing party no necessity, or burden, of proof. They plead no defense unless based upon well-pleaded sustaining facts. In re Estate of Rule, 178 Iowa 184, 193, 194, 159 N.W. 699; Conway Bros. v. Iowa Hardware Mut. Ins. Assn., 190 Iowa 1369, 1373, 181 N.W. 768.

The cases of Schramm & Schmieg Co. v. Shope, 200 Iowa 760, Lietchfield Mfg. Co. v. Heinicke, 200 Iowa 958, and Andrew v. Rivers, 207 Iowa 343, all supra, do not aid defendants. The first two cases are distinguishable on the facts. In the third case defenses were held not to be sustained.

Under the uncontroverted facts plaintiffs were entitled to the granting of their motion for judgment. No defense to plaintiffs' cause of action, based on waiver, acquiescence, estoppel, delay, or other act or omission on the part of plaintiffs, under the facts alleged in defendants' amended answer, was stated.

In the judgment and decree entered below, after stating the judgment on the note against the Herbransons, it is then stated "that judgment be entered in favor of the plaintiffs in the same amount against the defendants Edward and Marvel Bergeson."

█  The Bulk Sales law makes no provision for a personal judgment against a buyer for a creditor's claim. Under section 555.4, 1946 Code, the buyer is to become a receiver and held accountable to the creditors for all the goods, etc. and proceeds

therefrom which come into his possession. The purpose of the Bulk Sales law is to restore the status quo, so that the property may be subjected to the claims of creditors as though the sale had not been made. A creditor is entitled to no more. The receiver must account to him for his pro rata share, but a creditor is not entitled to a personal judgment against the purchaser-receiver for the amount of his claim or any part thereof, if he makes a proper accounting.

Except as thus modified, and as modified in Division I, the judgment and decree is affirmed and the cause is remanded for entry in conformity herewith.—Modified, affirmed and remanded.

All JUSTICES concur.