R. E. NOKES, appellee, v. R. W. WADE et al., appellants.

No. 48149.

(Reported in 55 N.W.2d 187)

OCTOBER 14, 1952.

O. P. Bennett and John Fletcher, both of Mapleton, for appellants R. W. Wade, Mapleton Implement Company and K. S. Wade.

Rice & Rice, of Mapleton, for appellant Joe Slota.

Robert M. Underhill, of Onawa, for appellee.

MANTZ, J.—Plaintiff, R. E. Nokes, on February 10, 1951, filed a petition at law against R. W. Wade, Mapleton Implement Company and Joe Slota to recover a money judgment for $912.83 on a check given plaintiff by R. W. Wade and the Mapleton Implement Company in payment of an account due and owing plaintiff, which check was not paid due to insufficient funds. His petition alleged that shortly after the check was given Joe Slota purchased the business in bulk from the Mapleton Implement Company and that neither the buyer nor the seller complied with the Bulk Sales law, and prayed that Slota be decreed to be a receiver of the property so purchased in favor of plaintiff as creditor by reason of said unpaid check. The defendants named and others interpleaded, made answer denying such claim, and Joe Slota by answer and cross-petition admitted in substance that there was no compliance with the provisions of the Bulk Sales law but alleged that such failure had been waived by the plaintiff, that he acquiesced in the sale and was now estopped to assert such claims. R. W. Wade and K. S. Wade alleged that

the Mapleton Implement Company was a corporation and denied that in the sale of part of the business of said company it had acted illegally or in violation of its corporate powers.

The issues were transferred to equity and the court granted plaintiff a judgment against the Mapleton Implement Company for the sum of $912.83 and interest; also holding that Joe Slota be held to be a receiver for the stock and fixtures purchased of said implement company from the date of the purchase for the benefit of the creditors of the corporation, including the plaintiff. It further gave judgment to Joe Slota against R. W. Wade and K. S. Wade for all sums which he pays or is required to pay on the judgment entered, together with interest and costs, and provided that execution issue to Joe Slota for any sums so paid on the property of R. W. Wade and K. S. Wade. Defendants, cross-petitioner-Joe Slota, and parties impleaded have appealed.

I. Before setting forth the specific matters involved in this appeal we think it advisable to briefly outline some of the proceedings had and the situation which led to this controversy and appeal.

The suit was started at law but due to various pleadings and claims made was transferred to equity and was decided in that forum. Some of the defendants came in by interpleader upon motion of other parties. Some of those interpleaders are here as cross-appellants. The pleadings were long, somewhat involved and in some respects confusing. However, in essence the principal question involves a sale of parts of an implement stock located at Mapleton, Iowa, by the Mapleton Implement Company, a corporation, early in November 1950 to Joe Slota. Both seller and purchaser are parties herein. For some months the implement company had been a debtor of plaintiff, a jobber in farm implements. In October 1950 said account amounted to $912.83. Plaintiff had dealt with the implement company for some months and stated that it was slow in making payments. In order to raise funds to take care of this account the implement company, in October 1950, made a sale of a part of its stock to Joe Slota and gave him a bill of sale to the parts sold and Slota paid to the president of the implement company, R. W. Wade, $3256.29, for which a receipt was set forth in the bill of

sale. The sum paid was deposited to the account of the implement company in the Mapleton Trust & Savings Bank and was later, in part at least, withdrawn therefrom by K. S. Wade, a stockholder in the implement company.

During negotiations between the implement company and Slota, R. W. Wade, president of the corporation, made a trip to Des Moines and contacted plaintiff and took up the matter of account then existing between them. The evidence as to what was said and done between them at that time is a matter in dispute, some of which will later be set forth in this opinion. The date of this meeting was late in October or early in November 1950. At that time the Mapleton Implement Company and R. W. Wade made and delivered to plaintiff the check sued upon and in return plaintiff gave to the maker a receipt showing payment of the account.

It can be fairly inferred from the record that at that time the deal of the sale to Joe Slota was in the making. The check was postdated to November 27, 1950.

It stands without dispute that the sale from the implement company to Slota, as between the parties, was valid and for valuable consideration. Upon inquiry Slota was informed by the seller that the parts sold were clear and free from claims of creditors. Slota stated both in pleading and as a witness that he acted in good faith.

Neither the seller nor the buyer attempted to comply with the terms of the Bulk Sales law (chapter 555, Code, 1950) by giving the notice set forth therein to creditors.

Plaintiff's pleading sought to hold Slota as a receiver for the goods purchased from the implement company and after the hearing the court so held.

Sometime about November 27, 1950, plaintiff, through his local bank, sent the $912.83 check to the Mapleton bank upon which it was drawn. That bank, on December 4, 1950, returned said check unpaid to the plaintiff with the report of "insufficient funds." After that plaintiff phoned the implement company and the check was again sent out but was not paid. Plaintiff went to Mapleton to see the maker of the check but it was not paid and he thereupon turned it over to a Justice of the Peace

for collection. Later, and on February 10, 1951, this action was commenced.

One of the main issues in the case grows out of the failure of the seller and the buyer of the part of the implement company to comply with the Bulk Sales law. It is conceded that there was no such compliance. Plaintiff argues that such noncompliance on the part of the seller and buyer rendered the sale void as to creditors. The court held that there was no completed sale to Slota when the check was given; that the failure to give the statutory notice to the creditor, plaintiff, made the sale invalid as far as the plaintiff was concerned and decreed that Slota was a receiver for the benefit of the creditors of the implement company.

We will consider this matter before taking up the claims of the cross-appellants.

Slota admits that no notice of the sale was given. However, he pleads that in October and November 1950 plaintiff was advised that the implement company and Slota were contemplating a sale in order to pay the amount owing plaintiff, and with this knowledge in advance he accepted a post-dated check and thereby waived his right to rely upon the Bulk Sales law and by accepting said check he acquiesced in said sale and relied upon the assurances of the seller that the post-dated check would be paid from the proceeds of such sale and that he thereby estopped himself to assert any claim arising out of such check against defendant Slota.

Regarding plaintiff's claim that the sale from the implement company to Slota was void, we find that this court in many cases has construed the term "void" to mean "voidable." In the recent case of Evans v. Herbranson, 241 Iowa 268, 275, 41 N.W.2d 113, 118, 15 A. L. R.2d 925, the writer, Justice Bliss, discussed this matter at length and cited in support of such construction Carnall v. Kramer, 194 Iowa 359, 189 N.W. 755; Pratt Paper Co. v. Eiffler, 196 Iowa 199, 194 N.W. 370; Lietchfield Mfg. Co. v. Heinicke, 200 Iowa 958, 205 N.W. 774; Schramm & Schmieg Co. v. Shope, 200 Iowa 760, 205 N.W. 350.

In the Evans case above-cited there was no compliance with the terms of the Bulk Sales law. The defendants alleged that

the creditor waived his right to rely on the statute and acquiesced in the sale and was thereby estopped to assert such claim. Under the record and pleadings this claim was held good. See also Palo Savings Bank v. Cameron, 184 Iowa 183, 199, 168 N.W. 769, 774. In that case there was a bulk sale and when it came to a settlement and a disposition of the proceeds a controversy arose between the bank and the holder of the chattel mortgage. There was a claim that the plaintiff had waived its claim to rely on the provision of the Bulk Sales Act. In passing upon this question this court by Justice Gaynor said:

"A creditor who participates in a bulk sale, who consents to the goods' being sold in bulk, in expectation that the proceeds of the sale are to be applied upon his indebtedness, cannot be heard to say that the sale was fraudulent and void simply because the notice of intent to sell in bulk did not comply with the statute. That is to say, a creditor who consents to a bulk sale, with the understanding that the money realized from the sale is to be paid in discharge of his obligations, cannot be heard to say that the contemplated sale was fraudulent on proof alone that the statutory notice was not given. The stopping of the sale by attachment on that ground alone cannot be justified upon a record which shows that the attaching creditor knew that the sale was about to be made, and consented to it. The notice required by the statute is for the benefit of the creditors. The statutory provision is to protect creditors, and can be waived by the party for whose benefit it was made. Where one consents to a thing's being done without compliance with the formalities of the statute, he cannot predicate fraud upon the doing of the thing to which he consents. He cannot be allowed to shield himself behind a statute made for his protection, when he consents to the thing's being done without the formalities of the statute."

In Evans v. Herbranson, supra, we said at page 278 of 241 Iowa: "Under the decisions in Andrew v. Rivers, Schramm & Schmieg Co. v. Shope, and Lietchfield Mfg. Co. v. Heinicke, all supra, conduct by a creditor tending to show waiver, acquiescence or estoppel by him with respect to the sale or his rights under the Bulk Sales law may have a bearing upon the creditor's right to recover."

It is hardly necessary to set forth the definitions of the terms "waiver", "acquiescence" and "estoppel." See 31 C. J. S., Estoppel, section 114; also McKeon v. City of Council Bluffs, 206 Iowa 556, 221 N.W. 351, 62 A. L. R. 1006; 44 Words and Phrases, page 516 et seq.; 56 Am. Jur., Waiver, section 3, page 103. See also Webster's New International Dictionary, Second Ed., "estoppel", page 875; "waiver", page 2865; "acquiescence", page 23.

We think the evidence shows that plaintiff at the time he and Wade met in Des Moines knew that the implement company was negotiating a sale with Slota; that the implement company needed the Slota money to pay plaintiff's account and that it could not be paid until the sale was completed. As a witness plaintiff stated that they were selling out when they gave him the check; that they were selling out and that they were negotiating with Slota to sell the business to Slota and that he understood later the same was made. From the cross-examination of plaintiff we set forth the following as appearing in the record:

"The check is dated 11-27-1950, but I received that about two or three weeks prior to the time, I don't recall. The check was actually given to me at the time Mr. Wade came to Des Moines, I can't recall the date. Q. Now at the time Mr. Wade presented this check to you, you say he told you that he was negotiating for a sale of his business? A. Yes. Q. Did he give you the impression that the business had not actually been sold at the time he gave you the check? A. Yes. It had not been settled for. Nothing is sold until it is settled for. Q. Now, Mr. Nokes, what was the reason for dating the check to the 27th of November, 1950? A. Well, he said he couldn't get any settlement or anything, and he wouldn't have the money until he received the settlement and at that time he would clean it up. Q. By 'settlement' you refer to the settlement of the sale of the Mapleton Implement Company to a being who was negotiating for it about that time? A. Yes. Q. Was it your understanding, Mr. Nokes, that this $912.83 was to be paid out of funds derived from the sale of the Mapleton Implement Company business? A. Well, I don't know where the money was coming from. I just took the check as a check and written in a business, and

that is all I gave thought to. It was just in settlement of his account and would be paid and I would be doing him a favor until he had got settled up with whoever it was."

Following the return of the check we find plaintiff testifying:

"I had been dealing with the Mapleton Implement Company prior to November 27, 1950, about a year, and I found that their payments were slow. I was not personally acquainted with R. W. Wade or K. S. Wade before I started dealing with the Mapleton Implement Company. After the check was returned marked 'insufficient funds' I got on the telephone two or three times and talked with R. W. Wade, and he said to send the check back and it would be all right, which I did, and the check again came back. Following the second return of the check I got in my automobile and went to Mapleton and presented it to the bank, and then I took it to the Justice of the Peace in Mapleton, Mr. Morrison was his name, I believe, and told him to go out and collect it."

There are other facts and circumstances which indicate that plaintiff took and accepted the post-dated check knowing that Slota was buying some of the stock and elected to rely upon the assurances that the check would be paid from the proceeds of such sale. In the face of this record it seems to us that plaintiff waived his rights under the statute, that with a knowledge of the sale he acquiesced therein and that he thereby estopped himself to urge the claim against Slota. It seems to us that to hold otherwise would be highly inequitable to Slota and would be prejudicial to his rights.

We hold that the trial court erred in holding that the sale as to plaintiff was invalid and that Slota was a receiver for the property to the extent of plaintiff's post-dated check.

We will next take up and consider the matter of the cross-appeal of the Mapleton Implement Company, R. W. Wade and K. S. Wade. The record as made in this court on the cross-appeal of such defendants is not clear and is in some respects confusing. The brief of said cross-appellants was filed in this court on June 18, 1952. Appellee's brief was filed July 3, 1952.

Appellee's brief seems to ignore the brief and its claims as set forth in that of cross-appellants.

There is no question but what the Mapleton Implement Company is a corporation. Cross-appellants Mapleton Implement Company, R. W. Wade and K. S. Wade, sole stockholders, state in their brief that they are making no defense for the Mapleton Implement Company, a corporation. The trial court in the judgment and decree referred to the $912.83 check sued upon by plaintiff as being given by the Mapleton Implement Company, a corporation. The trial court in the judgment and decree, findings of fact and conclusions of law refers to the Mapleton Implement Company as a corporation. The only exception which may be inferred is in the court's conclusions of law, which is as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the plaintiff, R. E. Nokes, have and recover judgment against the Mapleton Implement Company in the sum of $912.83, with interest thereon at 5% from November 27, 1950 (the clerk will compute the correct amount), besides costs."

We are unable to find in the decree of the trial court any judgment against R. W. Wade or K. S. Wade. The judgment was against the corporation.

We have heretofore held that on the appeal of Joe Slota, defendant cross-petitioner, the case must be and is reversed. The claim of the other defendant and impleaded parties was much along the same line as that by Slota. Our ruling in favor of Slota on the matter of the Bulk Sales law disposes of any recital of judgment or execution of Slota against R. W. Wade and K. S. Wade.

It is our holding that on cross-appeal of the Mapleton Implement Company, R. W. Wade and K. S. Wade the judgment against the implement company as a corporation is to stand.

The appeal of Joe Slota as defendant and cross-appellant is sustained and a reversal is ordered as to him. The judgment against the Mapleton Implement Company, a corporation, is affirmed.

The costs are to be divided equally between plaintiff and

defendant Mapleton Implement Company.—Reversed in part and affirmed in part.

All JUSTICES concur.