Darlene PARKER, d/b/a Town & Country Real Estate, Appellee,

v.

Wendell TUTTLE and Leota Tuttle, Appellants.

No. 59171.

Supreme Court of Iowa.

Dec. 21, 1977.

Reynoldson, Van Werden, Kimes & Reynoldson, Osceola, for appellants.

Morr & Shelton, P. C., and Michael J. Streit, Chariton, for appellee.

REES, Justice.

This is an appeal by defendant real estate owners from a judgment in favor of the plaintiff real estate broker entered upon a jury verdict adverse to defendants for the amount of a sale commission under the ready, willing and able buyer rule even though defendants' farm was not sold. Following the overruling of defendants' post-verdict motion for a new trial, they instituted this appeal. We reverse and remand for a new trial.

The defendants, Wendell and Leota Tuttle, husband and wife, were at all times material to the controversy, owners as tenants-in-common of a farm premises containing 335 acres in Wayne County. Darlene Parker, at all material times was a licensed real estate broker, operating under the tradename and style of Town & Country Real Estate. Dixie Williams was a salesperson in the employ of the plaintiff Parker.

Dixie Williams and defendant Wendell Tuttle had been acquaintances for several years. In early September, 1973 Williams called the Tuttle residence and inquired whether Mr. Tuttle was aware of any small farms that might be for sale. Tuttle stopped at Mrs. Williams' home on September 14, 1973 to advise her of a few small farm premises which he knew were for sale, and in the course of the conversation Tuttle advised Mrs. Williams he would consider selling his farm for $600 per acre, 25% to be paid down, and 8% interest on the balance.

Sometime later, either Darlene Parker or Mrs. Williams called the Tuttle residence and asked that they be furnished aerial photos or maps of the Tuttle farm. On his way to work at the Farm Bureau office in Corydon on a morning some days later, Tuttle met Mrs. Parker at a convenient point and furnished her with the requested aerial photos. Dixie Williams went to the Tuttle home on September 20, 1973 for the purpose of having Wendell Tuttle identify the boundaries of the farm on her plat book, but found Wendell Tuttle was not at home so Mrs. Williams engaged Mrs. Leota Tuttle in conversation. She did not, however, ask Mrs. Tuttle whether she was interested in listing the farm for sale or in selling the farm, nor did she discuss the terms of the alleged listing agreement which she considered existed between the plaintiff's firm and Mr. Tuttle.

Apparently on the same day as the visit of Mrs. Williams to Mrs. Tuttle, Parker and Williams presented to Wendell Tuttle an offer to purchase agreement signed by one Charles Shivvers. The offer was for the sum of $184,250 with $10,000 to be paid down and the balance to draw interest at the rate of 7% over a term of years. The offer and acceptance agreement reflected that the balance was to be paid $20,000 on or before March 1, 1974, $10,000, September 1, 1974, and $10,000 plus 7% interest on March 1, 1975, and each March 1st until the balance was paid in full. Wendell Tuttle did not accept the terms and provisions of the offer. In testifying, Tuttle, referring to the offer which was identified in the record as Exhibit "C", stated he did not like

the price, the interest provisions, or the down payment terms, and testified further that he advised Parker and Williams he wanted 25% down to wipe out his mortgage on the farm. Tuttle further testified that Mrs. Parker stated at the time Exhibit "C" was proffered to Tuttle for his acceptance that Shivvers, the proposed buyer, was unable at that time to come up with 25% down payment. Tuttle further testified that during the same meeting he advised Parker and Williams he would take less than $600 an acre only if he could reserve a three-acre tract of land on which was situated a government bin site, and if said reservation was satisfactory he would consider selling the entire tract for $198,000.

The same afternoon Parker and Williams met Tuttle at the Farm Bureau office in Corydon and presented a second offer in writing, which was identified in the record as Exhibit "D". The offer provided for a $200,000 total payment, with $10,000 to be paid down, and 7½% interest on the remaining balance. Tuttle testified he did not accept the offer, although he indicated to Parker and Williams that the offer was a good one, and advised the broker and salesperson they should get in touch with his wife, Leota, to determine her opinion of the second offer. Parker testified that, in fact, Wendell Tuttle dictated and approved the terms set out in Exhibit "D".

Later that same afternoon, Wendell Tuttle, Parker and Williams went to the Tuttle residence and presented the second offer, Exhibit "D", to Mrs. Tuttle. Leota Tuttle has stated that although it was a good offer, she needed time to consider it with her husband, and did not indicate her acceptance of the offer. On September 21 Mrs. Parker called the Tuttle residence to inquire whether the Tuttles were disposed to accept the second Shivvers offer, and were advised by the Tuttles they were not going to accept it. The institution of the suit followed, resulting in a verdict for the plaintiff for $10,000.

Defendants state the following issues for review, which they contend mandate a reversal.

(1) Trial court erred in overruling defendants' motion to strike certain material from the petition of the plaintiff.

(2) Trial court erred in overruling the motion of defendant Wendell Tuttle for leave to amend his answer filed October 29, 1975 with the trial scheduled to begin on October 30, 1975.

(3) Trial court erred in overruling defendants' motion for directed verdict at the close of the plaintiff's case and at the close of all the evidence.

(4) Trial court erred in overruling defendants' motion for judgment notwithstanding the verdict; and

(5) Trial court erred in overruling defendants' motion for a new trial.

■ I. In their first issue stated for review, defendants contend trial court erred in overruling their motion to strike matter from the petition of the plaintiff. Motions to strike from pleadings should be sustained only when the allegations in the pleading attacked had no possible relationship to the controversy, and if there is any doubt as to whether under any contingency the pleaded allegations go to a material issue the motion to strike should be denied. *Evans v. Herbranson*, 241 Iowa 268, 278, 41 N.W.2d 113, 119–120, 15 A.L.R.2d 925, and citations; and *In re Condemnation of Certain Land*, 253 Iowa 1130, 1134–1135, 114 N.W.2d 290, 292.

The trial court did not exceed the limits of its discretion in overruling defendants' motion to strike from plaintiff's petition.

II. The cause was scheduled for trial on October 30, 1975, and October 29 defendant Wendell Tuttle filed a motion seeking leave of court to amend his answer. In the amendment he sought permission to amend paragraph 3 of his answer, in which he originally had pleaded that "on or about September 14, 1973 he did tell plaintiff's salesperson he would sell the described farm for $600 per acre * * *", and he desired to add the words, "subject to his wife's approval" after the words, "would sell".

In overruling defendant's motion to amend his answer, trial court found and ordered "that, by amending defendant's answer at this time, the defendant is changing his defense in that he is making the contract conditional to the wife's acceptance, which has not been pleaded in the pleadings other than in the ambiguous terms 'and other relevant conditions were met' * * it appears to the court that, by now amending the answer to insert 'subject to his wife's approval', it would change the issues and change the defense of the defendant, Wendell Tuttle, and the court overrules the motion for leave to amend the pleadings as proposed".

Trial courts have great discretion in allowing amendments to pleadings. Rule 88, Rules of Civil Procedure. (Reference to rule 88 being to the rule as it appeared before its amendment by order of January 28, 1977). At the time of trial of this case, rule 88 read:

> "Any pleading may be amended before a pleading has been filed responding to it. The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense. The court may impose terms, or grant a continuance with or without terms, as a condition of such allowance."

■ Amendments to pleadings should not be allowed on the eve of trial or later if they substantially change the defense or any issue involved in the case. *Ackerman v. Lauver*, 242 N.W.2d 342, 345 (Iowa 1976); *Atlantic Veneer Corp. v. Sears*, 232 N.W.2d 499, 503 (Iowa 1975); *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 188 (Iowa 1974); *Smith v. Village Enterprises, Inc.*, 208 N.W.2d 35, 37 (Iowa 1973).

■ The trial court took the view that the addition of the words, "subject to his wife's approval" substantially changed the defense in this case by referring to a specific claim of defendant that could have been considered only as being ambiguously embraced in the term, "other relevant conditions", which was the phrase in the defendant's answer as originally cast and filed.

We are unable to perceive any abuse of discretion on the part of the trial court in its overruling of defendant's motion to amend his answer.

■ III. In the next issue stated for review, defendants assert the trial court erred in overruling their motions to direct verdicts in their favor at the close of the plaintiff's case and renewed at the close of all the evidence.

We do not feel called upon to extend this opinion by treating this issue in detail. We have reviewed the record and conclude there was a fact question generated by the evidence in all the respects referred to in the briefs and arguments of the parties, justifying the submission of the case to the jury and the overruling of defendants' motions for direction of verdict. We perceive no error on the part of the trial court in this connection.

IV. Nor do we feel called upon to extend this opinion unduly by passing in detail upon all of the matters raised by the defendants in their contention that the trial court erred in overruling their motion for judgment notwithstanding the verdict filed after the jury had returned its verdict and prior to the entry of judgment. The same grounds were urged in the motion for judgment notwithstanding the verdict as were urged by the defendants in the motion for direction of verdict.

V. In contending trial court erred in overruling their motion for a new trial, the defendants state multiple sub-issues which they assert mandate a reversal. They contend initially that the verdict was not supported by sufficient evidence. We have touched upon this contention heretofore in our discussion of the motion to direct a verdict and motion for judgment notwithstanding the verdict, and do not deem it necessary to explore this contention further.

VI. The jury in this case was directed by instruction # 16 as follows:

> "It has been agreed by the parties hereto that you may return a sealed verdict.

"Attached hereto are forms of verdict and you will use that for which is in accord with the verdict you may agree upon in this case.

"If you return a verdict during the first six hours of your deliberation, it must be agreed to by all of you and will be signed by your foreman only. If, after deliberating for six hours, you are unable to arrive at a unanimous verdict ten of you may return a verdict and it must be signed by the ten who agree. If your foreman is the dissenting juror, he should not sign the verdict.

"This case is submitted to you at 3:26 o'clock, p.m., at which time your deliberations are deemed to commence.

"After you have agreed upon your verdict and signed the same, the foreman will then place the instructions and verdict in the envelope given you for that purpose, seal it, and deliver it and the exhibits to the bailiff.

"The foregoing instructions numbered from One to 16, inclusive, were each read and given to the jury by the Court on its own motion this 3rd day of November, 1975."

The foregoing instruction was consistent with rule 203(a) of the Rules of Civil Procedure which was amended by the Acts of the 65th General Assembly in 1973, and which reads as follows:

"(a) Number. Before a general verdict, special verdicts, or answers to interrogatories are returned, the parties may stipulate that the finding may be rendered by a stated majority of the jurors. In the absence of such stipulation, a general verdict, special verdicts, or answers to interrogatories may be rendered by five-sixths of the jurors. However, no general verdict, special verdict or answers to interrogatories may be rendered by five-sixths of the jurors or less until the jurors have deliberated for a period of not less than six hours after the issues to be decided have been submitted to them."

In rendering its verdict, ten members of the jury signed verdict form # 1 submitted by the court, in which they found in favor of the plaintiff, and fixed the amount of plaintiff's recovery against the defendants at $10,000. As is obvious from instruction # 16, above set out, the case was submitted to the jury at 3:26 o'clock, p.m., and it returned a sealed verdict at 9:32 o'clock, p.m., on November 3, 1975. The record discloses, and the parties agree, that out of the six-hour six-minute time which elapsed between the submission of the case to the jury and the return of the verdict, the jury spent one hour or more partaking of a meal at a cafe in Corydon. We are faced with the responsibility of determining, as a matter of first impression in this jurisdiction, whether time spent by a jury eating in a public place is included or excluded from deliberation time for computing the six-hour period required by rule 203(a) before the jury can be permitted to return a valid five-sixths verdict.

Both the defendants and the plaintiff cite and place considerable reliance upon the pronouncements of the Minnesota Supreme Court and the Nebraska Supreme Court to support their divergent views. The plaintiff contends the jury acted properly in returning a five-sixths verdict after it had the case under consideration for a total elapsed time of six hours and six minutes. The defendant insists that rule 203(a) requires actual deliberation for a period of six hours before a less than unanimous verdict is permitted. The Minnesota case cited and relied on by both parties is *In re Hurlbut's Estate*, 126 Minn. 180, 148 N.W. 51. In that case the jury retired at 5:25 p.m. and returned its verdict at 11:47 a.m. on the following day, having been out a trifle over 18 hours. Section 7805, The General Statutes of Minnesota (1913), provided:

"In all civil actions or proceedings in any court of record of this state, after twelve hours' deliberation, the agreement of five-sixths of any jury therein shall be a sufficient and valid verdict; the deliberation of the jury shall be deemed to have commenced when the officer taking charge of the jury has been sworn, and the clerk shall enter such time in his records."

In *Hurlbut*, the appellant claimed that the time actually devoted to the consideration of the case was less than twelve hours, and submitted in support of his contention an affidavit made by one of the ten jurors who signed the verdict. The Minnesota Court held that the affidavit of the juror was not admissible for the purpose of impeaching the verdict of the jury, and said, at page 52 of 148 N.W.:

> "We think that neither the statute, nor the constitutional provision upon which it is based, contemplated that the court should pry into the secrets of the jury room and determine when the jurors were deliberating and when they were not. There is no intention manifested to place jurors under an espionage to which they had not before been subjected, nor to raise the veil of secrecy which enshrouds them while in retirement for the purpose of consulting together and determining upon their verdict. During such retirement they are presumed to be properly performing their duties. Their deliberations are not necessarily confined to discussions with each other. While such discussions are essential to the proper consideration of matters concerning which there is a difference of opinion, a juror may deliberate as wisely and to as good effect when he is considering and weighing the evidence in his own mind, as when he is pressing his conclusions upon his fellows. * * * The court assumes that they are deliberating while in retirement for that purpose and will made no inquiry into the nature or extent of such deliberations. * * *

> "It is the province of the trial court, which knows how, where, and under what conditions the jury has been confined during its retirement and is familiar with all the circumstances, to determine when the jury has given sufficient consideration to a case to warrant receiving a verdict not unanimous. * * * Where a jury has been in retirement for a period well beyond the time prescribed by statute, the law conclusively presumes that they have been in deliberation for the required length of time."

The Supreme Court of Nebraska was called upon to construe its statute, § 25–1125, R.R.S.1943, enacted under constitutional authorization which provided in substance that where five-sixths of the members of a jury concur in a verdict, it will have the same validity as if all members of the jury concurred therein, and that a verdict concurred in by less than all of the members of the jury should not be rendered until the jury should have had an opportunity for deliberation and consideration of the case for a period of not less than six hours after the case was submitted to the jury. In *Cartwright & Wilson Construction Co. v. Smith*, 155 Nebr. 431, 52 N.W.2d 274, the first matter in which the Nebraska court had occasion to pass directly upon the proposition, it held that *Hurlbut* was applicable and decisive upon the point. In *Cartwright* the record disclosed that case was submitted to the jury at 4:30 p.m. on March 14, 1951, which deliberated until 6:00 p.m. when it was taken to dinner at a local cafe by the bailiff. Approximately one hour elapsed from the time the jury left the jury room until it returned after dinner. The jury advised the bailiff it was ready to return a verdict, at which time the court and counsel for the respective parties were notified. At the direction of the court, the jury was brought into open court and delivered its verdict, concurred in by ten members, at 10:45 p.m.

It should be noted that the Nebraska statute provided that the jury "should have had an *opportunity for* deliberation and consideration of the case for a period of not less than six hours after the same is submitted to said jury". (Italics ours.)

Rule 203(a), R.C.P., set out above, is, in our judgment, considerably more restrictive than the Nebraska statute. Our rule requires the jurors to "*have deliberated* for a period of not less than six hours", whereas, the Nebraska statute, being less restrictive, only requires that the jury have "an opportunity for deliberation". (Italics ours.)

 We believe that rule 203(a), R.C.P., not only says what it means, but

means what it says. It requires the jury to be in actual deliberation for a period of not less than six hours before a nonunanimous verdict is permitted. In this respect, deliberation means time actually spent in the jury room. A jury is not in actual deliberation when it is at recess. Obviously, in the matter before us here, the jury could not have been in deliberation for a period of six hours and we believe the trial court erred in not granting defendants' motion for a new trial based upon such showing.

VII. When the jury retired to deliberate upon its verdict, some of the jurors took with them a "Trial Juror's Manual" which had been handed to the individual members of the jury panel at the time they reported for jury duty. One paragraph set out in the manual advised the jurors as follows:

"*Differing Viewpoints*: Quite often differences of opinion arise between jurors. If this happens hear one another out before forming a final conclusion. The collective thoughts of the jury are the best equalizer or leveler of opinion yet devised in the legal process. Each of you brings his own experiences and values into the jury room and, from these different viewpoints, comes the conglomerate verdict. Don't hesitate to change your mind if you decide that your first opinion was incorrect, but you should not change your opinion unless you are honestly persuaded that the changed opinion is the correct one. Just as it is wrong for one juror to try to be opinionated and bully another into changing his mind, it is just as wrong for a juror to refuse to listen to the arguments and opinions of others. If everyone is fair and reasonable a jury can usually agree; if not, it generally means a new trial, which is a great expense to the parties and the state so jurors should be fair, reasonable and courteous to one another and try to reach an agreement."

The defendant claims that the text of the manual above set out, which the jurors admittedly considered during their deliberations, was verdict-urging and coercive and that the reference to the expense of a new trial in the event of a mistrial due to the jury being unable to reach a verdict brought some of the members of the jury into submission and eventual agreement with the majority.

■ The pamphlet, or manual, should not have been in the jury room and apparently both the defendants and the plaintiff are in agreement on this point. We need not decide whether this incident requires reversal because we reverse on the ground treated in Division VI, and we trust the problem will not recur on retrial. Further, the affidavit of one of the jurors in the record in this case does not satisfy us that the jurors regarded the manual as evidence.

■ VIII. Sometime during their deliberations the jurors were in agreement that they desired to hear part of the testimony (more particularly, that of defendant Wendell Tuttle) read back to them. They communicated their desires in this regard to the bailiff who had the jury in charge. The bailiff made an affidavit which was attached to the defendants' motion for a new trial. In his affidavit he stated (referring to the jury's request for a reading of the testimony): "I told them they couldn't have it. I told them they had all they could have. I did not call the judge." Clearly, it would have been improper for the bailiff to have granted the request of the foreman to have the testimony of defendant Wendell Tuttle read back to them without direct authority of the trial judge to have the jury returned into court for further instructions. See *Fleming v. Town of Shenandoah*, 67 Iowa 505, 506–507, 25 N.W. 752, 753. Under his oath the bailiff was permitted only to communicate with the jury for the purpose of determining whether the jurors had agreed upon a verdict.

■ Clearly, it was incumbent upon the bailiff to communicate the jury's request to the trial judge, and for the trial judge to determine after conference with counsel whether to grant the jury's request. We do not decide whether the conduct of the bailiff in this case rises to the level of being

reversible error, but certainly want to be understood as criticizing the conduct of the bailiff in failing to report the request of the jury to the trial judge.

Based upon our conclusion the trial court erred in overruling defendants' motion for a new trial based upon the defendants' claim the jury had not comported itself in its deliberations in accordance with rule 203(a), R.C.P., we reverse this case and remand it for a new trial.

REVERSED AND REMANDED.

All Justices concur, except RAWLINGS, J., who concurs specially and REYNOLD-SON, J., who takes no part.

RAWLINGS, Justice (concurring specially).

I would reverse, not only upon the same basis as does the majority, but also because of what are to me reversible errors considered in Division VII and VIII of the majority opinion.

Therefore I concur in the result.